[Civ. No. 13057.   Second Dist., Div. Three.   July 29, 1942.]

STEPHEN CEDZO, Appellant, v. ROBERT BERGEN et al., Respondents.

Lawrence E. Drumm and H. Spencer St. Clair for Appellant.

Spray, Davis & Gould for Respondents.

SCHAUER, P. J.—This case arises out of a collision of automobiles at an intersection of highways, the configuration of

Plaintiff's Exhibit No. 1

which presents a situation of particular difficulty for vehicular traffic and is of basic importance in determining this appeal. The intersection is that of Redondo Boulevard and Florence Avenue in the city of Inglewood. Both thoroughfares are broad, paved highways, the Florence Avenue roadway being 40 feet in width and Redondo Boulevard being 50 feet wide. Redondo Boulevard is signposted as a through highway. Florence Avenue runs approximately east and west and converges with Redondo Boulevard, which latter highway continues westerly almost directly in line with the extended lines of Florence. At the intersection, Redondo Boulevard curves slightly (about 19 degrees) toward the north and continues in a general east northeasterly direction. Complicating the problems of the intersection is the fact that throughout the area in question double streetcar tracks of the Los Angeles Railway (on its private right of way) parallel Redondo Boulevard adjacent to it on the southerly side. Apparently to avoid the hazard of stopping motor vehicles on the street railway company's right of way as it crosses Florence Avenue, the stop sign and white line marker controlling traffic on Florence Avenue approaching the intersection from the east are placed east of the streetcar tracks. Thus vehicles on Florence Avenue traveling west are required to make the boulevard stop for Redondo Boulevard at a point considerably east of the actual position of the extended easterly curb line of the through highway. According to the unchallenged statements in respondents' brief (assertedly based on a diagram in evidence) the stop sign is 180 feet east, and a white line marker on the roadway with the word "STOP" painted in front of it, is 140 feet east, of the extended easterly curb line of Redondo Boulevard. It must also be noted that according to an unchallenged statement in appellant's opening brief (likewise assertedly based on the diagram in evidence) the easterly car track paralleling Redondo Boulevard is approximately 80 feet west of a point in the center of the north half of Florence Avenue, opposite the stop sign. The intersection is open and unimpeded so far as visibility is concerned. Comprehension of all of the foregoing locale facts is essential to intelligent consideration of the reciprocal rights and duties of the parties to this action and the rules regulating their conduct in the premises.

On July 9, 1939, at approximately 2:25 a. m., plaintiff was a guest in a Ford coach which was being driven in a westerly

direction on Florence Avenue by one Roberts. It is undisputed that the night was clear and the visibility good. According to testimony of the plaintiff and the driver Roberts a stop was made either at the stop sign or at the white line in the roadway. Plaintiff fixed the stopping point as just in front of the white line on the roadway while Roberts, the driver of the Ford, testified that he stopped at the flashing stop sign. As previously noted, the stop sign was approximately 40 feet east of the white line, about 80 feet east of the easterly car track, and about 180 feet east of the extended southeasterly curb line of Redondo Boulevard. Both plaintiff and the driver said that while stopped they saw defendants' automobile about 600 or 700 feet away, traveling east (toward them) on Redondo Boulevard. The lights on the car in which plaintiff was riding were burning and at least one head lamp on defendants' car was lighted. The Ford (plaintiff car) then started up, according to plaintiff's evidence, and proceeded (at a speed not exceeding 20 miles per hour) across the street railway tracks to the point of collision, which, likewise according to plaintiff's evidence, was about 90 feet beyond the tracks (west thereof) and near the center of Redondo Boulevard. Defendants' evidence placed the point of collision at about the same point as did plaintiff's evidence so far as the east-west direction was concerned, but some 10 feet south of the center line of Redondo Boulevard. Defendant Bergen, who was the operator of the automobile owned by defendant Enochs, testified that he did not see the Ford until it was "just about" to the railway tracks, that it was then traveling about 40 miles per hour, and that the distance between the two automobiles, when he first saw the Ford, was about 200 feet. He said that he was traveling about 30 miles per hour in his right hand (the southerly) lane of traffic and that he did not slow up when he first saw the Ford but "When the cars were about 50 feet apart, I saw he was not going to stop at all, so I stepped on the brake and swerved to the left." Defendant driver also stated that his car traversed about 80 feet from the point where he first saw the Ford to the point of impact. At 40 miles per hour it would require about one and one-half seconds to travel 80 feet. It is undisputed that plaintiff received severe injuries in the collision, that he was a guest in the Ford, and that negligence of the Ford driver, Roberts, is not imputable to him.

The verdict of the jury was for defendants and plaintiff

appeals from the judgment, contending (1) that the evidence is insufficient to support the judgment in that defendants' own evidence establishes that the defendant driver Bergen was guilty of negligence as a matter of law in failing to see the approaching Ford until it was approximately at the railway tracks (within 200 feet of the defendants' car) and in failing, after seeing it, to take any action to avoid the collision until the two automobiles were within 50 feet of each other; (2) that the trial court erred to the prejudice of plaintiff in instructing the jury, of its own motion, and contrary to an instruction requested by both plaintiff and defendants, that contributory negligence of plaintiff was an issue in the case; (3) that the trial court erred prejudicially to plaintiff in giving on its own motion an instruction based on a section of the Vehicle Code as amended subsequent to the accident. None of these contentions can be sustained.

On plaintiff's first point we are not disposed to hold that the implied finding of the jury that defendant driver was not guilty of negligence proximately contributing to the accident is as a matter of law untenable. The evidence in this regard is more thoroughly discussed later on in this opinion. Certainly, however, we must recognize that the evidence would amply support a contrary verdict. This latter fact makes it necessary for us to give careful consideration to the two asserted errors in law occurring at the trial.

Defendant pleaded contributory negligence as a defense, in the following language: ''That plaintiff was guilty of negligence which proximately contributed to and caused the happening of the accident in question, in this: That at said time and place he was riding in an automobile which he knew was being driven, or as a reasonable and prudent person should have known was being driven, in a careless, reckless, negligent and unlawful manner.''

At the trial no evidence was elicited which could support a finding that plaintiff was guilty of negligence which proximately contributed to his injuries. There is no evidence of any lack of ordinary care by the driver of the Ford prior to the time that the boulevard stop was made on approaching the Redondo Boulevard intersection and the events thereafter disclose no negligent act or omission on the part of plaintiff. Neither defendant driver nor his witnesses claimed to have seen the Ford until it was approximately at the railway tracks —about 80 feet beyond (west of) the point where it was re-

quired to make the boulevard stop—but even if we could deduce from the evidence of defendants as to the rate of speed of the Ford at the car tracks that it had failed to make the boulevard stop we should still lack a reasonable basis for charging plaintiff with personal responsibility for such negligence of the driver Roberts (see *Chapman* v. *Pacific Electric Ry. Co.*, (1927) 85 Cal. App. 69, 74 [258 Pac. 1006]).

Plaintiff urges that the case was tried by both parties on the theory that contributory negligence of the plaintiff was not in issue and points out that both plaintiff and defendants requested the court to instruct the jury as to the issues to be determined, as follows: "Issues to be Determined. The issues to be determined by you in this case are these:

"First: Was the defendant negligent?

"If you answer the question in the negative, you will return a verdict for the defendant. If you answer it in the affirmative, you have a second issue to determine, namely:

"Was that negligence the proximate cause of any injury to the plaintiff?

"If you answer that question in the negative, plaintiff is not entitled to recover, but if you answer it in the affirmative, you then will find what damage plaintiff has suffered and return a verdict in his favor for the amount thereof.

"As indicated in this instruction, you should first determine the question of liability.

"Requested by Plaintiff. Requested by Defendant."

The above quoted requested instruction, however, was refused and the court of its own motion gave an instruction reading as follows: "By the Court No. 1. The issues to be determined by you in this case are these:

"First: Was the defendant negligent?

"If you answer that question in the negative, you will return a verdict for the defendant. If you answer it in the affirmative, you have a second issue to determine, namely:

"Was that negligence a proximate cause of any injury to the plaintiff?

"If you answer that question in the negative, plaintiff is not entitled to recover, but if you answer it in the affirmative, you then must find on a third question:

"Was the plaintiff negligent?

"If you find that he was not, after having found in plaintiff's favor on the other two issues, you then must fix the

amount of plaintiff's damages and return a verdict in his favor.

"If you find that plaintiff was negligent, you then must determine a fourth issue, namely:

"Did that negligence contribute in any degree as a proximate cause of the accident?

"If you find that it did, your verdict must be for the defendant, but if you find that it did not, and you previously have found that there was negligence on defendant's part which proximately caused plaintiff injury, you then must fix the amount of plaintiff's damages and return a verdict in his favor.

"As indicated in this instruction, you should first determine the question of liability." It will be noted that by this instruction the jurors were told that plaintiff's negligence *was an issue to be determined by them* and that if they found that plaintiff was negligent and that his negligence contributed in any degree as a proximate cause of the accident "your verdict must be for the defendant." Appellant further urges that the impropriety of the above quoted instruction was aggravated by the court through its giving, likewise of its own motion, an instruction defining contributory negligence as follows: "Contributory Negligence—Definition. Contributory negligence is negligence on the part of a person injured which, cooperating in *some degree* with the negligence of another, *helps* in proximately causing the injury of which the former complains.

"One who is guilty of contributory negligence may not recover from another for the injury suffered. (The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages among the participating agents of causation." (Italics added.) It is argued, in effect, that the definition quoted coupled with the fact that there was no evidence which justified submitting the issue to the jurors, would reasonably tend to confuse them.

If the matter stood just as above delineated the error would be apparent, but in fairness to the trial court it must also be noted that the issue as to plaintiff's contributory negligence was raised by the pleading, that the plaintiff did not request an instruction that the evidence was insufficient to support a verdict against the plaintiff on the issues so raised, and on the contrary plaintiff did request the following instruction

(which was given) : "Direction Against Imputation As to a Plaintiff—Contributory Negligence. You are reminded of the fact that the vehicle in which plaintiff Stephen Cedzo was riding at the time of the accident in question was then being operated by Melbourne T. Roberts. I instruct you that the driver's negligence, if any, may not be imputed to the plaintiff and that, therefore, you shall find that there was no contributory negligence on the part of the plaintiff Stephen Cedzo unless you find that there was personal negligence on his part—that is, some negligent conduct of his own, which contributed as a proximate cause to his injury." Plaintiff's request for that instruction was impliedly a request that the issues on plaintiff's contributory negligence be submitted to the jury and having requested such instruction the plaintiff cannot complain either that it was given or that the court gave the other two instructions above quoted. The first one merely told the jury that the issue was before them—as plaintiff impliedly requested—and the other defined the term. While the definition is vague there is no contention that it is prejudicial in form; the objection is to the fact that it was given at all, not to its form or substance as such. ██ As a general rule it is proper for the court to state to the jury the issues raised by the pleadings (24 Cal. Jur. 825) and it is also true that a party is estopped to assert error in an instruction requested by him. The same rule prevails as to instructions requested by an adversary if they merely invoke the same proposition which has been asserted by the party complaining (*Yolo Water & Power Co.* v. *Hudson,* (1920) 182 Cal. 48, 51 [186 Pac. 772] ; *Vickerson* v. *Standard Auto Sales Co.,* (1923) 64 Cal. App. 287, 290 [221 Pac. 392] ; *Hunt* v. *Sutter-Butte Canal Co.,* (1924) 66 Cal. App. 363, 369 [225 Pac. 884] ; *Chase* v. *Southern Pac. Co.,* (1931) 119 Cal. App. 341, 345 [6 P. (2d) 540] ; *Musante* v. *Guerrini,* (1932) 125 Cal. App. 556, 562 [13 P. (2d) 965] ). ██ We hold that this rule likewise governs instructions given by the court of its own motion under the circumstances shown here.

██ Plaintiff's third point presents a more serious problem but one which upon analysis appears not to be prejudicial. At the time the accident occurred, July 9, 1939, section 577 of the Vehicle Code provided that "The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop-sign as provided in this code shall stop *at*

*such sign* before entering or crossing such highway or intersection.'' (Italics added.) In 1939, but effective *after* the date of the accident in question, that section was amended to read, ''The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop sign as provided in this code, except as otherwise permitted or directed in this code, shall stop before entering the nearest crosswalk or, if none, then at a limit line when marked, otherwise before entering such highway or intersection.'' (Stats. 1939, ch. 320, § 5.) It was in this last quoted form that the section was read to the jury as an instruction by the court of its own motion. The instruction as given included the heading, ''Vehicles Must Stop at Through Highways.'' Plaintiff also quotes another instruction, given at the defendants' request (modified by the court in a portion not material here), reading as follows: ''I instruct you that as a matter of law Redondo Boulevard at the place where this accident occurred was outside a residential or business district; ~~and was what is commonly known as a 'through highway'~~; and in this connection I further instruct you that if *you find that Redondo Boulevard was a through highway and that* the defendant Mr. Bergen was exercising ordinary care, he had a right to assume that other drivers would obey the law and before crossing Redondo Boulevard at Florence Avenue would bring their cars to a stop before entering or crossing Redondo.

''You are further instructed that if Mr. Bergen was exercising ordinary care he had a right to further assume that any driver about to cross Redondo Boulevard which had brought his car to a stop *as is required* at the entrance to a through highway, would yield the right of way to him or any other cars traveling on Redondo Boulevard which were approaching so closely thereto as to constitute an immediate hazard.'' In this connection plaintiff contends that ''The natural effect of the erroneous instruction complained of [section 577 as amended in 1939] together with the last quoted instruction, would be to inform the jury that the Ford automobile in which appellant was riding should have come to a stop before it entered Redondo Boulevard at the line drawn on the Plaintiff's Exhibit No. 1, [a map of the locale] indicating the prolongation of the southerly curb line of Redondo Boulevard which said prolongation was placed thereon by respondents' attorney.'' Plaintiff also calls attention to the fact that the jury were instructed that a violation of section 577 of the

Vehicle Code would be negligence *per se* and urges that the effect of that instruction, coupled with the other two instructions last mentioned, was to inform the jury that the driver of the car in which plaintiff was a guest was guilty of negligence on his own testimony in failing to stop again precisely at the entrance (curb line prolongation) to Redondo Boulevard even if he had already stopped at the stop sign.

We do not find such contention reasonable. Examination of Plaintiff's Exhibit No. 1 discloses that it portrays the position of the stop sign, the white line painted on the roadway, and other topographical features, as well as a dotted line indicative of the prolongation of the southerly curb of Redondo Boulevard. There is no justification for inferring that such dotted line on the diagram could have been construed by the jury as indicating a "limit line" marked on the roadway. It appears to us that the jury most probably would have construed the words "limit line" as used in section 577 as denoting the white line painted on the roadway and depicted on Plaintiff's Exhibit No. 1. It is true that there was a conflict in the testimony of plaintiff and the driver Roberts as to whether the Ford stopped at the stop sign or at the stop line. But it was plaintiff himself who testified that the stop was made at the white line. If the jury believed plaintiff's testimony in that respect they must have concluded that the law as erroneously stated in the instruction being discussed was complied with by Roberts. If they believed Roberts' testimony that the stop was made at the stop sign and concluded that the law was violated by him in not stopping at the white line, they still could not, under the instructions given, have imputed Roberts' negligence to plaintiff. In either event the stop would have been made before the defendant Bergen saw the Ford and the question as to whether Bergen was or was not negligent in failing to see the Ford sooner or, after seeing it, in failing to take some action sooner to avoid the collision, would have been substantially the same. The very fact that the stop sign and the stop line were placed at such a considerable distance back from the curb line (extended) of Redondo Boulevard obviously placed on the driver of the car in which plaintiff was riding the responsibility of recognizing that a car approaching from the west on Redondo Boulevard, even though a considerable distance away from the actual intersection, might constitute an immediate hazard to a car

attempting to cross such intersection from a start on Florence Avenue at either the stop sign or the stop line.

■ As to the right of way rule the jury were correctly instructed that "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway." The phrase "at the entrance to a through highway" cannot be narrowly construed to mean precisely at the extended curb line. In many instances it would be impracticable, if not impossible, to erect stop signs exactly "at the entrance" to the highway if such a narrow construction were placed on those words. Section 82.5 of the Vehicle Code defines "through highway" as "a highway or portion thereof *at the entrance* to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs are erected as provided in this code." (Italics added.) In the case before us it is obvious that in the liberal view both the stop sign and the stop line must be regarded as being "at the entrance" to the through highway even though they are a substantial distance from the extended curb line bounding the limit of the intersection.

■ It is apparent that the jury, in the light of all the circumstances depicted in evidence, must have concluded that defendants' car constituted an immediate hazard to the one in which plaintiff was riding at the time the latter made its stop, if it did stop, and that defendant Bergen was not negligent either in failing to see Roberts' car sooner or in failing to stop or turn sooner than he did. It is to be recognized that according to defendant Bergen's evidence the Ford car was approximately at the railway tracks when he first saw it, that the cars were then about 200 feet apart, that the Ford car was traveling at 40 miles per hour and defendants' car at about 30 miles per hour. The cars were therefore approaching each other at a combined speed of about 70 miles per hour (102.66 feet per second) which means that only two seconds would have been consumed in reaching the point of impact if neither

slowed down. The fact that during the last few moments each did perhaps decrease its speed would add but little to the seconds separating them. If we accept the witness Roberts' testimony that defendants' car was traveling at 50 miles per hour and was 600 feet away at the time he stopped at the stop sign and deduct the approximately 200 feet which Roberts' car traversed from the stop sign to the point of impact we have 400 feet left for defendants' car to travel which, at 50 miles per hour (73.33 feet per second) would have consumed less than five and one-half seconds. We cannot hold that it was unreasonable for the jury to conclude that a car approaching at 50 miles per hour on a through highway so close to an intersection as to reach approximately its center in less than five and one-half seconds was an immediate hazard to a car which had stopped at a stop sign or line 180 to 140 feet back of the extended curb line of that intersection. If the jury believed that the Ford car was stopped at either the stop sign or the stop line but notwithstanding such fact had attained a speed of 40 miles per hour by the time it reached the railway tracks (a distance of 40 to 80 feet) they may also have inferred that the driver Roberts was hurrying in an effort to beat defendants' car across the intersection.

The jury apparently believed that it was the duty of the Ford driver to yield the right of way and that defendant driver had a right to, and did, in the exercise of ordinary care, assume that he would do so. The result of failure to yield such right of way would be the same whether the failure be regarded as coming from not stopping or from not slowing down. In view of the fact that defendants' approaching car did constitute an immediate hazard to the Ford driver and that the latter did not yield the right of way, we cannot say that it is probable (Cal. Const., art. VI, § 4½) that a different conclusion as to defendants' negligence would have been reached without the reading of section 577 as amended in 1939 and other instructions on the same subject.

From the foregoing discussion we believe it adequately appears (1) that the evidence is sufficient to support the jury's verdict, (2) that the act of the court in instructing the jury that contributory negligence was an issue in the case was invited by the plaintiff and hence cannot be availed of by him as prejudicial error, and (3) that the error in instructing the

jury in the language of section 577 of the Vehicle Code as amended after the accident was not prejudicial.

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1942.