[Civ. No. 16363.   First Dist., Div. Two.   July 26, 1955.]

HENRY M. SMITH et al., Respondents, v. FORTUNE
JULES PELLISSIER et al., Appellants.

Fred Levé and Myers & Meehan for Appellants.

Bagshaw, Schaal & Martinelli for Respondents.

NOURSE, P. J.—These are reciprocal negligence actions of two married couples injured when their cars collided. In each car the husband was the driver and each couple sued the driver of the other car. The verdicts were for the Smiths who were driving on a sign-posted through highway; the Pellissiers, who drove their car from a side road into the highway in front of the Smith car, appeal. Appellant in singular will hereinafter indicate Mr. Pellissier, respondent Mr. Smith.

The through highway is Tiburon Boulevard which connects Tiburon in Marin County with Highway 101. The side road is Cove Road which connects Belvedere in Marin County with Tiburon Boulevard, at which it ends. The parties consider Tiburon Boulevard at the intersection as running easterly and westerly; the directional arrow on the surveyor's plat used in the case shows that such is not correct, but as the absolute directions are without importance herein we shall follow this terminology of the parties. Cove Road then enters Tiburon Boulevard from the southeast, forming a ''Y'' intersection. At the intersection Cove Road widens very strongly so that cars can more easily turn from it into Tiburon Boulevard both in easterly and westerly direction. The stop sign which protects the boulevard is placed where Cove Road begins to widen. Appellant Mr. Pellissier testified that from the stop sign to the southern travel lane of the boulevard he had measured the distance to be 90 feet.

The accident happened on April 26, 1953 at about 11 p. m. It was raining and the pavement was very wet. The Smiths in their Ford were going east on Tiburon Boulevard back to their home at Tiburon. The Pellissiers in their Buick were coming from Belvedere, where they had had dinner at the house of Mr. Mantegani, and were going home to San Francisco. Mr. Mantegani in his car was bringing away another guest in the same direction and the Pellissiers, who were not certain of the way back, were to follow him. To go to San Francisco over Highway 101 the cars had to turn left (west) into Tiburon Boulevard. When Mr. Mantegani came to the stop sign, he stopped there and seeing a car only far away to the west, probably not nearer than 800 feet, he proceeded to cross. He crossed the middle line of the boulevard at a

speed of 20 miles per hour and increased it thereafter. He met the car coming from the west (the Smith car) after he himself had been going west on the boulevard for a distance of which the estimates vary between 100 and more than 200 feet. He estimated the speed of the Smith car at 40 to 45 miles an hour, which was more than his own speed.

Appellant testified that he had stopped behind the Mantegani car at the stop sign, that when Mr. Mantegani started up he followed immediately to the stop sign and made a full stop there, that he then saw a car coming from the west just at the other side of the railway tracks which cross the highway and which he measured later to be 175 yards (525 feet) from the place of the accident. He made no estimate of the speed of the oncoming car, but knew that Tiburon was a main traveled boulevard, and he thought that there was there a maximum speed zone of 35 miles an hour. He then started and drove on in low gear at a constant speed of 5 miles an hour into the boulevard. He continued to observe the oncoming car and when the front of his own car was at the southern travel lane of the boulevard he saw the other car about the length of the courtroom away (it was subsequently fixed at 51 feet). It was coming pretty fast. The right front wheel of the Pellissier car was over the middle line, the left front wheel just before it when the Smith car hit it just in front of the driver's seat. However, the witness Thruston, a highway patrolman, testified that when after the accident he asked appellant how far the other vehicle was when he noticed it when pulling away from the stop, his answer was ''I first saw him when he was six or eight feet from me.''

Respondent testified that he was familiar with the intersection and the stop sign. He was driving 30 to 35 miles an hour before he came to the railway tracks, and diminished to approximately 25 when coming to the tracks. From there he could see more clearly lights moving in Cove Road in the direction of the boulevard. He saw the lights of two cars of which he thought the lead car was stopped at the stop sign, the second car 12 or 15 feet behind it. When he had passed the railway tracks he increased speed to approximately 30 miles. Just then he saw the lead car start. He took his foot from the accelerator. The lead car passed 170 feet (or less) in front of him and it actually passed him on the highway 50 or 60 feet from the place of the later impact. When the first car had crossed in front of him he saw the second car moving up very slowly. Possibly up to 12 feet back from the

imaginary south border line of the highway it stopped a second. Respondent was then in the highway about 50 feet from the place of impact and he concluded that appellant was giving him the right of way. Respondent continued his course but at that distance of 50 feet the other car suddenly started in front of him. He threw on his brakes, but he started sliding. He tried to turn to the right but did not succeed and the cars collided. When he saw the lead car start when he was approximately 500 feet from the point of impact he could easily have stopped. On cross-examination .of respondent there was some conflict with the above, but statement of these conflicts and of other details of testimony seem unnecessary for this appeal.

Appellants' first contention is that respondent was guilty of negligence as a matter of law because he violated section 552 of the Vehicle Code by not yielding the right of way. The contention is without merit. Section 552 reads:

"(a) The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard.

"(b) Said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

It is evident that only then we could hold as a matter of law that respondent violated section 552, if we could say as a matter of law that he was not approaching so closely on the through highway as to constitute an immediate hazard. The question whether an approaching vehicle constitutes an immediate hazard is ordinarily one of fact concerning which the jury's conclusion is binding on appeal" (*Zwerin* v. *Riverside Cement Co.*, 52 Cal.App.2d 715, 719 [126 P.2d 920]). This rule must certainly apply in this case where the decision in question is complicated by conflicts in the evidence and by the fact that the stop of the appellant was made at a considerable distance from the point of actual danger, to wit where the paths of the two cars would actually cross. In *Cedzo* v. *Bergen*, 53 Cal.App.2d 667, 677-678 [128 P.2d 683] it is said: "The very fact that the stop sign and the stop line were placed at such a considerable distance back from the curb line (extended) of Redondo Boulevard obviously

placed on the driver of the car [which stopped there] the responsibility of recognizing that a car approaching from the west on Redondo Boulevard, even though a considerable distance away from the actual intersection, might constitute an immediate hazard to a car attempting to cross such intersection from a start on Florence Avenue at either the stop sign or the stop line.'' In this case appellant testified that he drove the 90 feet from the place where he stopped to the actual intersection at a speed of only 5 miles an hour. According to the generally accepted approximation that a speed of a number of miles per hour equals a speed of one and a half times that number of feet per second, appellant at a speed of $7\frac{1}{2}$ feet per second needed approximately 12 seconds to reach the place of actual danger. At the moderate speed of 35 miles an hour (a speed considered by appellant) respondent's car would in 12 seconds have gone approximately 630 feet, which is more than the distance at which appellant sighted it.

Moreover, even if appellant had had the right of way and if therefore respondent had been in violation of section 552, such would not conclusively have proved negligence, but the presumption to that effect could have been overcome by evidence showing that respondent's conduct was excusable, justifiable or such as might have been expected from a person of ordinary prudence under all the circumstances of the case, which matter normally presents a question of fact for the jury. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279].) The jury was so instructed and could believe respondent's testimony that appellant made a second stop when he was near the actual intersection at a time when respondent was not more than 50 feet away, and the jury could hold that under these circumstances respondent could reasonably believe that appellant yielded the right of way to him, so that he was justified in continuing in his course. It could then also hold that appellant was negligent in starting up and moving into respondent's path.

''Whether a driver acts with due care or negligently in proceeding across a through highway must as a general rule be left to the determination of the jury in view of all the circumstances.'' (*Wilkinson* v. *Marcellus*, 51 Cal.App.2d 630, 633 [125 P.2d 584]; *Grasso* v. *Cunial*, 106 Cal.App.2d 294, 300 [235 P.2d 32].)

Appellants next complain of the following part of the instructions given:

"But in a situation where a driver about to enter a through highway may properly stop at a point some distance away from the boundary of the through highway, the duty of that driver to yield the right of way to vehicles approaching on the through highway, so closely as to constitute an immediate hazard, continues up to the time the entering driver reaches the entrance to the through highway."

According to appellants this instruction imposes on appellant a too long continued duty to yield the right of way, to wit until he reached the traveled portion of the through highway.

The paragraph complained of forms part of 25 pages of instruction without division into numbered sections or indication as to whether any part was proposed by appellants or respondents or was given on the court's own motion. With respect to the specific question of stopping and right of way at an intersection with a through highway, the instructions contain over and above the part complained of the text or the applicable part of the text of sections 81, 82.5, 471, 577, 86, and 552 of the Vehicle Code and the following paragraphs, which we number consecutively for reference, indicating where paragraphs have been omitted:

.    .    .    .    .    .    .    .    .    .

(1) "The location at which the State Department of Public Works may have erected a stop sign at an intersection to a through highway, does not necessarily indicate the entrance to the through highway, nor the beginning of the intersection of the through highway. Section 471 of the Vehicle Code provides:

" 'Every stop sign shall be located at or near the entrance to the highway or intersection where a stop sign is required.' "

.    .    .    .    .    .    .    .    .    .

(2) "For the purpose of this case an intersection is the area within which vehicles traveling upon different highways joining at an angle such as the angle involved here may come in conflict."

.    .    .    .    .    .    .    .    .    .

(3) "If you believe from the evidence in this case that Pellissier stopped at the stop sign before entering the intersection, and at the time he entered the intersection the Smith automobile was not at that time an immediate hazard, then I instruct you that under such circumstances it was the duty of Smith to yield the right of way to Pellissier, and if he

did not do so under such circumstances, then he violated the provisions of Section 552 of the Vehicle Code of this State.''

(4) ''But if Mr. Smith was exercising ordinary care, and was approaching so closely to Cove Road as to constitute an immediate hazard to the entry onto Tiburon Boulevard of the Pellissier car, at the time the Pellissier car was stopped at the entrance to the intersection, then Mr. Smith had a right to assume that the Pellissier car would yield the right-of-way to him.''

(5) ''You may ask yourselves the question: When has a vehicle on a through highway approached so close to an intersection as to constitute an immediate hazard? The answer is that the approaching vehicle is that close whenever, if a reasonably prudent person were in the position of the driver who has stopped his automobile at the entrance to the through highway, he would apprehend the probability of colliding with the approaching vehicle were he then to enter the highway.''

.    .    .    .    .    .    .    .    .    .

(6) ''A driver on a through highway is not absolved from the duty of maintaining a proper lookout and keeping his car under control, and where another car enters the highway at a time when the car on the through highway is not 'approaching so closely as to constitute an immediate hazard,' the driver of the vehicle on the through highway is under a duty to yield the right of way to the car engaged in crossing it.''

(7) ''It is the duty of every person using a public highway, whether a pedestrian or the driver or operator of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision.''

.    .    .    .    .    .    .    .    .    .

(8) ''A motorist who attempts to enter a through highway from a side road does not do so at his peril. He has certain established rights which must be respected by motorists on the through highway. If you find in this case that Pellissier stopped at or near the stop sign and then proceeded to cross the intersection at a time when Smith's car did not constitute an immediate hazard, then I instruct you under such circumstances that Pellissier had the right of way and it was the duty of Smith to yield the right of way to him.''

(9) ''One entering a through highway is required by law to stop but once and that at the entrance to a through highway. I hereby instruct you that for the purposes of this case the stop sign located on Cove Road is at the entrance to the inter-

section of Cove Road with Tiburon Highway, even though you may feel that it is some distance from any boundary line of the intersection.''

Immediately thereafter follows the paragraph complained of, and the charge then continues with:

(10) ''If you find that Tiburon Boulevard was a through highway and that the plaintiff, Henry Smith, was exercising ordinary care in driving upon said highway immediately preceding the accident, then the said plaintiff Henry Smith had a right to assume that all other drivers, including the defendant Pellissier, would obey the law and would bring their automobiles to a stop before entering Tiburon Boulevard and would yield the right of way to the said plaintiff Smith if the automobile of the said plaintiff Smith was then approaching so closely to said intersection as to constitute an immediate hazard.''

There can be little doubt that this charge is repetitious, complex and uncertain in its terminology. The meaning and the relation of the expressions, ''entrance to through highway, beginning of intersection, entering the intersection, entry into Tiburon Boulevard, enter the highway, engaged in crossing it, proceed to cross the intersection, boundary line of the intersection'' would be sufficiently clear if they related to a normal crossing of two roads where cars made their stop near to the travel lanes to be crossed or turned into, but are uncertain in this case where the stop is made far from the crossing lanes of traffic. For instance it can hardly be said that a car which proceeds after having stopped at the stop sign at that moment enters the through highway or even the intersection, as at that place no cars ''traveling upon different highways'' (see instruction 2) ''may come in conflict.'' Such can only happen where the traveled portions of both highways meet or less than a car length outside of said area. Moreover there seems to be some conflict in the rules stated in the different instructions as to the right of way, considering that appellant stopped at a distant stop sign. Some of them seem to decide the question of right of way according to conditions existing at the moment that appellant's car was stopped at the stop sign or starting from there (instructions 3 and 4 and more ambiguously 5, 8 and 10). Such may well be in accord with the language of section 552, Vehicle Code, if construed to mean that the car about to enter the through highway yields the right of way at the place where it makes its stop, and proceeds only from there when it is entitled to

the right of way. Language in *Cedzo* v. *Bergen, supra,* 53
Cal.App.2d 667, 678 ("at the time the latter made its stop")
seems to point in that direction. However, in instruction
6 the decisive moment seems to be that on which the car
coming from the lesser road enters or crosses the through
highway. This may well be a more practical approach. (See
*Elmore* v. *County of Lassen,* 10 Cal.App.2d 229, 232 [51 P.2d
481].) Under it the driver of the car about to enter a
through highway must stop in accordance with section 577,
Vehicle Code, to observe traffic conditions, but if the point
where he stopped is distant from the actual crossing of the
travel lanes he may move up to that point carefully if he
can do so without danger and decide there whether he can
enter or cross the through highway without any car then
moving on the through highway causing an immediate danger.
The parties discuss the instruction complained of as if it pro-
vided for the latter manner of deciding the right of way.
However, it does not do so, or at least less clearly than instruc-
tion 6, which is not attacked. It says that the duty of the
entering driver to yield the right of way continues up to the
time he "reaches the entrance to the through highway." Im-
mediately preceding this instruction instruction 9 had told the
jury "that for the purpose of this case the stop sign located
on Cove Road is at the entrance to the intersection of Cove
Road with Tiburon Highway." Earlier in instruction 1 it had
been said that the stop sign did not necessarily indicate the
entrance to the through highway or the beginning of the inter-
section of the through highway because the sign under section
471, Vehicle Code could be placed *at or near* the intersection.
In our case, however, it was stated to be *at* such entrance.
(Instruction 9.) As the entrance and the stop sign accord-
ingly are the same place the instruction attacked did not
enlarge appellant's duty to yield the right of way.

We cannot know with certainty how the jury understood
this instruction, or the whole combination of instructions men-
tioned, but at any rate, no defect in the instruction complained
of, separately or in connection with related instructions, can
entitle appellants to a reversal. As mentioned before, the
record does not show who proposed any of these instructions
or whether any of them were given at the court's own motion.
■ When the record fails to show who requested the in-
structions, it will be presumed by the appellate court that
they were requested by the appellant who claims them to be
erroneous (4 Cal.Jur.2d 441-442). ■ Under the doctrine of

invited error, a party cannot complain on appeal of the giving of an instruction which he requested, which is substantially the same as one he requested or the giving of which was invited by one he requested (4 Cal.Jur.2d 423). This matter is treated at length in *Lynch* v. *Birdwell*, 44 Cal.2d 839 [285 P.2d 919], just decided by our Supreme Court.

Finally appellants assert that the sum of $31,500 awarded respondents is excessive and not justified by the evidence, without making any statement with respect to the injury suffered or the evidence regarding it except that "Mrs. Smith sustained serious injuries." After respondents in their brief have set out at length the grievous character of Mrs. Smith's injuries and Mr. Smith's medical costs, loss of consortium, and minor own injury, with reference to the transcript, more than sufficient to justify the award, appellants in their closing brief do not make any further statement as to this point. "Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point . . . If this is not done, the error assigned is deemed waived." (*Tesseyman* v. *Fisher*, 113 Cal.App.2d 404, 407 [248 P.2d 471].) Appellants' attitude as to this point obviously constitutes waiver.

Appellants also appeal from an order denying their motion for a judgment notwithstanding the verdict. As no separate grievances are presented in this respect, it does not require separate consideration.

Judgment and order affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied August 25, 1955, and appellants' petition for a hearing by the Supreme Court was denied September 21, 1955.