Filed 10/5/22  Pena v. City of Arroyo Grande CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| REMIGIO PENA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF ARROYO GRANDE,<br><br>    Defendant and Respondent. | 2d Civ. No. B306869<br>(Super. Ct. No. 18CV-0114)<br>(San Luis Obispo County) |

Remigio Pena was riding his motorcycle southbound on Halcyon Road near its T-intersection with The Pike in the City of Arroyo Grande (City). Carl Tucker was driving westbound toward the intersection along a private driveway. Before entering the intersection, Tucker drove past the wooden stop sign on the driveway to a point where he could clearly see the traffic coming in both directions. He then stopped. After looking left twice and right once and seeing "zero traffic," Tucker moved into the intersection and struck Pena.

Pena sued multiple defendants, including the City. He contends that visual obstructions to the north of the driveway, the configuration of the intersection, sight lines in the intersection and the absence of a stop sign on Halcyon Road created a dangerous condition of public property which contributed to the accident. (See Gov. Code, § 835.)[1]

The City moved for summary judgment on Pena's first amended complaint (FAC) arguing that "(1) the property described in the FAC is not a dangerous condition as a matter of law under . . . section 830(a); (2) the property was not the proximate cause of [Pena's] injuries; and (3) the City is entitled to immunity under . . . section 830.4." The trial court found no triable issues of material fact and granted summary judgment on all three bases. We affirm.

## I. FACTUAL BACKGROUND

The Pike is a two-lane road running east-west, controlled by a stop sign at its termination with Halcyon Road, creating a T-intersection. Across from The Pike, the private driveway from Halcyon Estates Mobile Park (Halcyon Estates) intersects with the eastern side of Halcyon Road, which has a posted speed limit of 40 miles per hour. At the time of the collision, Halcyon Road was a through street, uncontrolled by stop signs at its intersection with The Pike. The Pike had a stop sign at the Halcyon Road intersection.

On the north side of the Halcyon Estates exit is a berm containing trees, a telephone pole, traffic signs and ice plants. Depending on the location of a vehicle exiting the driveway, the

---

[1] All statutory references are to the Government Code unless otherwise stated.

2

driver's view of Halcyon Road looking north (to the right) is obscured by the berm's features.

Near the Halcyon Estates exit is a small wooden stop sign that is within view of Halcyon Road when entering the intersection. "It [was] unclear to the [trial court] whether this small wooden stop sign exists on Halcyon's private property, or the City's property." The City denies it installed the stop sign.

On August 18, 2017, Tucker, who had lived at Halcyon Estates for 15 years, drove his car to the end of the private driveway. As was his custom, Tucker did not stop at the sign. He explained that the trees and telephone pole on the berm obscure the view of southbound traffic at that point. Instead, following his normal routine, Tucker drove the car towards Halcyon Road until he had a clear view of the oncoming southbound and northbound traffic.

Seeing "zero traffic" and "no traffic all three ways," Tucker slowly entered the intersection, "like an old slowpoke." Pena's motorcycle and Tucker's vehicle collided in the intersection. Pena did not see Tucker's vehicle until it was approximately four to five feet from his motorcycle. Tucker did not see Pena's motorcycle until the moment of impact. Pena, who was thrown from his motorcycle, suffered a broken leg and other injuries.

Zak Ayala, the City police officer who investigated the accident, concluded that Tucker caused the accident by violating Vehicle Code section 21804, subdivision (a), which requires drivers exiting private property to yield the right-of-way to all approaching traffic close enough to constitute a hazard. Ayala determined the berm "does not appear to have been a factor in the subject collision," and stated he was "unaware of any other collisions at the intersection of Halcyon Road and The Pike

3

involving drivers entering the intersection from Halcyon Estates."

## II.  PROCEDURAL HISTORY

Pena's FAC alleges claims for negligence against Tucker and Halcyon Estates and claims for premises liability against Halcyon Estates and the City.  The City's alleged liability is based upon a dangerous condition of public property (§ 835).

The City filed a cross-complaint against Tucker and Halcyon Estates seeking equitable indemnity and declaratory relief.  Tucker was dismissed from the cross-complaint after the trial court found his settlement with Pena was made in good faith.

Halcyon Estates and the City filed separate motions for summary judgment.  The trial court denied Halcyon Estates' motion.  In granting the City's motion, the court concluded Pena had failed to raise a triable issue of material fact regarding (1) whether the property at issue is a dangerous condition under section 830, subdivision (a); (2) whether the property proximately caused his injuries; (3) whether the City had both actual and constructive notice of the alleged dangerous condition; and (4) the City's immunity under section 830.4.

With respect to causation, the trial court stated:  "To recover for injuries based on a dangerous condition of public property, the plaintiff must establish that 'the injury was proximately caused by the dangerous condition.'  [§ 835.]  The City argues that the undisputed facts prove that the berm and the other 'generalized factors [such as] signage and failure to paint a limit line . . . the absence of a stop sign, an "offset driveway" [and] "elevation changes" on Halcyon Road' had nothing to do with the subject accident, and that it was solely

4

Tucker's negligence that caused this collision. [¶] Tucker testified that he had an adequate view in both directions on the date of the accident, and was cited for violating . . . Vehicle Code section 21804(a). According to the City, even if the berm is a dangerous condition, it is not the proximate cause of [Pena's] injuries. . . . Indeed, arguendo, if creeping forward is a dangerous condition, it did not proximately cause [Pena's] injuries because [he] was not injured in the spot where Tucker crept his vehicle forward. [Pena] was injured after Tucker maneuvered his vehicle into the intersection, after he had cleared all potential visual obstructions. Thus, Tucker's creeping did not proximately cause [Pena's] injuries." (Fns. and underlining omitted.)

## III. DISCUSSION

Pena contends triable issues of material fact exist regarding whether a dangerous condition of public property proximately caused his collision with Tucker. He also argues that statutory immunities do not apply.

### A. Standard of Review

A defendant moving for summary judgment or adjudication may demonstrate that the plaintiff's cause of action has no merit and that the defendant is entitled to judgment as a matter of law by showing that the plaintiff cannot establish one or more elements of the cause of action. (Code Civ. Proc., § 437c, subds. (a)(1), (f), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 (*Aguilar*).) The defendant may make such a showing by affirmatively proving that a specified fact does not exist or by showing that the plaintiff has no evidence to prove that fact. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.) Once the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable

5

issue of one or more material facts exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(1), (2); *Aguilar*, at p. 850.)

We review an order granting summary judgment de novo, employing the same analysis as the trial court. (*Aguilar*, *supra*, 25 Cal.4th at p. 860; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) We view the evidence in a light favorable to the party opposing summary judgment, liberally construing that party's evidence while strictly scrutinizing the moving party's showing and resolving all doubts in favor of the opposing party. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.) We consider all the evidence offered in the trial court except that which the court properly excluded. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)

### B. No Triable Issues of Material Fact Exist Regarding Causation

The City contends there is sufficient space for Halcyon Estates' residents to pull their vehicles forward toward Halcyon Road to obtain an unobstructed view in both directions and to safely enter the roadway. Pena disagrees, arguing that to "clear the visual obstruction from both the berm (hills ground cover, shrubs, and trees) and the traffic signs and pole at the edge of Halcyon Road, a vehicle exiting the [mobile home] park must pull up so far as to actually encroach into the roadway of Halcyon Road."

Section 835 "prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property. [Citation.] [It] provides that a public entity may be held liable for such injuries 'if the plaintiff establishes that the property was in a dangerous condition at the

6

time of the injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.' In addition, the plaintiff must establish that either: (a) '[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition . . . ,' or (b) '[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.'" (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105 (*Cordova*); see *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1131-1132 (*Zelig*) [a public entity's liability as a property owner must be evaluated under section 835 and not under general negligence principles].)

A dangerous condition is "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) With respect to public roadways, "'a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.] "If . . . it can be shown that the property is safe when used with due care [generally] and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of section 830, subdivision (a).""" (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 754-755 (*Thimon*).)

"[T]hird party conduct by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." (*Peterson v. San*

*Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810; *Zelig*, *supra*, 27 Cal.4th at p. 1134.)  Nonetheless, a finding of a dangerous condition is not precluded even where a third party's negligence was a proximate cause of the plaintiff's injuries. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 152-153 & fn. 5.)  "When a third party's conduct is the immediate cause of a plaintiff's harm, the question becomes whether the dangerous condition 'increased or intensified' the risk of injury from the third party's conduct."  (*Thimon*, *supra*, 44 Cal.App.5th at p. 754; *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1348.)  When addressing this question, courts must separate the issue of causation from the issue of dangerous condition.  (*Cordova*, *supra*, 61 Cal.4th at p. 1106.)  "A condition of public property may constitute a 'dangerous condition' even though it does not proximately cause [the] injury in a particular case."  (*Ibid.*)

Although Pena challenges each aspect of the trial court's ruling, we conclude the issue of causation is dispositive.  Even assuming a triable issue exists regarding whether a condition at or near the accident site on August 18, 2017 created a substantial risk of injury when used with due care, Pena's moving papers failed to raise a triable issue regarding whether such a condition proximately caused his injuries.

The requisite causal link between a dangerous condition and the plaintiff's injuries may be established if the public entity's conduct and the conduct of another party concur as proximate causes of the plaintiff's injury.  (*Harland v. State of California* (1977) 75 Cal.App.3d 475, 485.)  To establish causation, therefore, Pena must show that a physical condition of the City's property was a "'substantial factor'" in bringing about

8

his harm.  (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)  A plaintiff may prove causation through direct and circumstantial evidence and reasonable inferences drawn from that evidence.  (*Ibid*.)  But we cannot draw inferences "'from thin air.'" (*Ibid*.)

The City met its threshold burden of presenting evidence to show that Pena's injuries were caused by Tucker's actions and not by a dangerous condition at the accident site.  The burden then shifted to Pena to produce evidence showing a triable issue of material fact regarding the necessary causal link.  (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1105 (*Leyva*).)

To prove causation, Pena relied primarily upon the declaration of his human factors expert, Jason A. Droll.  Droll opined that Tucker was distracted from southbound traffic because (1) he had to be inordinately vigilant to northbound traffic as he was stuck in the northbound lane; (2) in order to escape the hazardous situation in the northbound lane, he was expected to accept smaller gaps in traffic than he might ordinarily accept; (3) once he made a decision to cross the intersection, there was inadequate time to correct his initial decision to cross; and (4) the alignment of The Pike and the Halcyon Estates' driveway forced Tucker to veer to the right 19.5 feet closer to southbound traffic to avoid any eastbound driver on The Pike.

Based upon these opinions, Pena asserts that "a driver in . . . Tucker's situation would be expected to be so distracted by looming threats to his left and directly across from him, that a previously undetectable threat to his right may have emerged by the time it was too late."  It is well established, however, that an expert's opinion based on assumptions of fact without evidentiary

9

support has no evidentiary value. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.) Proof of causation may be by direct or circumstantial evidence, but it must be by substantial evidence. Evidence that leaves the determination of these essential facts in the realm of mere speculation and conjecture is insufficient. In other words, "'[i]f [the expert's] opinion is not based upon facts otherwise proved, or assumes facts contrary to the only proof, it cannot rise to the dignity of substantial evidence.' [Citation.]" (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 83; see *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 484 [expert's opinion that a broken security gate was a substantial factor in bringing about a rape could not defeat summary judgment without any evidence that the rapist entered through the gate].)

Pena offered no evidence, such as corroborating eyewitness statements or conflicting testimony by Tucker, that Droll's theories reflect reality. (See *Bowman*, *supra*, 186 Cal.App.4th at p. 313.) It is undisputed that, depending on where a vehicle is on the Halcyon Estates private driveway, the driver's view of oncoming southbound traffic on Halcyon Road may be obstructed. But Tucker had travelled past those obstructions as he approached Halcyon Road. The undisputed evidence establishes that before Tucker drove into the intersection and collided with Pena, Tucker was able to stop in a position where he had a clear view of oncoming traffic in both directions.

Tucker testified that he probably did not see Pena because he did not properly look both ways before moving into the intersection. He stated: "It's an old-school children's thing. You look left, you look right, then you look left and right again. I

10

probably just missed looking right again." Indeed, Tucker was cited for violating Vehicle Code section 21804, subdivision (a), which states: "The driver of any vehicle about to enter or cross a highway from any public or private property, or from an alley, shall yield the right-of-way to all traffic, as defined in [Vehicle Code] [s]ection 620, approaching on the highway close enough to constitute an immediate hazard, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety."

There is no evidence that the alleged dangerous conditions diverted Tucker's attention or otherwise brought about the collision. Pena emphasizes Droll's statement that "[f]urther to the north, South Halcyon Road has a vertical drop, limiting a driver's view on The Pike or the mobile home driveway to see approaching southbound vehicles." Droll does not opine that this was a cause of the accident, and Pena simply speculates that it could have been a factor.

We also are not persuaded by Pena's argument that Tucker caused the accident by "creeping" partway into Halycon Road to obtain the unobstructed view of the northbound and southbound lanes. Even assuming that did occur, we agree with the trial court that the "creeping" onto Halycon Road did not proximately cause Pena's injuries. Pena was injured after Tucker left that spot and drove directly into the intersection.

Moreover, "[t]he practice of stopping at a limit line and then 'creeping' forward to a point of visibility has long been recognized as 'practical' under California Law. (See *Smith v. Pellissier* (1955) 134 Cal.App.2d 562, 570)." (*Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007, 1016, abrogated on

11

other grounds by *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73-74 & fn. 3.)

In sum, there is no basis in the record for a jury to reasonably find that a dangerous condition was a factor, let alone a substantial one, in bringing about Pena's injuries. In the absence of evidence creating a triable issue of material fact regarding causation, summary judgment was properly granted. (See *Leyva*, *supra*, 20 Cal.App.5th at p. 1105.) Given our conclusion, we need not discuss the parties' other arguments.

IV. DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.[*]

We concur:

GILBERT, P.J.

YEGAN, J.

---

[*] Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12

Tana L. Coates, Judge
Superior Court County of San Luis Obispo

_____

Ernst Law Group, Don A. Ernst and Nigel A. Whitehead; Esner, Chang & Boyer, Andrew N. Chang and Kevin K. Nguyen, on behalf of Plaintiff and Appellant.

Adamski Moroski Madden Cumberland & Green, Joshua M. George and Chase W. Martin; Pollak, Vida & Barer, Daniel P. Barer and Judy L. McKelvey, on behalf of Defendant and Respondent.