[Civ. No. 12806. Second Dist., Div. Three. May 4, 1942.]

SARAH M. MOORE et al., Appellants, v. ART V. MILLER, Respondent.

Ira J. McDonald for Appellants.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and White McGee, Jr., for Respondent.

SHAW, J. pro tem.—This action was brought by the plaintiffs to recover for personal injuries received by them, respectively, in a collision between an automobile owned and driven by plaintiff Boyd L. Moore and a truck driven by defendant, and for damages to the automobile from the same collision. After a jury trial judgment went for defendant, from which plaintiffs appeal.

The accident occurred on Whittier Boulevard June 26, 1939, at a little before 7 p. m., and as a result of it each plaintiff suffered serious personal injuries and substantial damage was done to the automobile. There is little conflict in the evidence. References hereinafter to the plaintiff mean the plaintiff Boyd L. Moore, unless otherwise stated. Whittier Boulevard at the scene of the accident is divided into four lanes by a double white line in the center and a single white line on each side. The defendant was driving his truck easterly on Whittier Boulevard and plaintiff was going in the same direction a short distance behind him. According to plaintiff, when he first saw

defendant's truck his own car was straddling the white line south of the center line, and defendant's truck was 150 feet ahead and in approximately the same position. The defendant turned his truck a little to the right and swung over, as he says, two or three feet, or as plaintiff says, five or six feet; then he turned left across the street in front of plaintiff. Defendant testified that his intention was to make a U-turn, and his destination was property occupied by him on the north side of the street in the block in which he turned. Before turning he looked several times into his rear-view mirrors, one of which was on the door post and one inside, but did not see plaintiff's car before the collision. When he turned, plaintiff's car was at a distance variously estimated at from fifty to ninety feet behind him. Several witnesses said defendant gave no signal for this turn and he was uncertain whether he gave one or not. Defendant had been driving more slowly than plaintiff, who was gaining on him (at a rapid pace, plaintiff admitted in a deposition read at the trial), and when defendant swerved to the right plaintiff turned entirely into the lane next the center line for the purpose of passing defendant and put his foot on the accelerator, but did not at any time sound his horn. When plaintiff realized defendant was turning left, he put his brakes on full force and kept them on, but could not stop in time, and the two vehicles came together in the middle of the street, the front end of plaintiff's car striking the left side of defendant's truck about its center. Plaintiff testified that before the accident he was driving forty to forty-two miles per hour, that he did not slow down until defendant started to turn left, and that he was still going fifteen or twenty miles per hour when the vehicles collided. A deputy sheriff who arrived a few minutes after the accident testified that plaintiff's car made skid marks eighty-four feet long and the truck made marks showing it had been shoved sidewise five feet.

Plaintiffs contend that whether the jury's verdict was based on a finding of plaintiff's contributory negligence or of defendant's freedom from negligence, it lacks support in the evidence, that plaintiff's negligence, if any, was not a proximate cause of the accident, that defendant was negligent as a matter of law, and that the trial court erred in the giving and refusing of instructions. The plaintiff Boyd L. Moore was the husband of the other plaintiff, and any contributory negligence on his part would therefore be imputable to her and bar her action for the personal injuries she suffered in

the accident. (*Smarda* v. *Fruit Growers' Supply Co.*, (1934) 1 Cal. App. (2d) 265, 268 [36 P. (2d) 701].)

Defendant contends that plaintiff was guilty of contributory negligence in not sounding his horn as he approached defendant's truck, and in connection with this contention we may consider the plaintiffs' claim that an instruction given on this subject at defendant's request was erroneous. That instruction reads as follows: "You are instructed that section 528 of the California Vehicle Code in force and effect at the time and place of this accident, provided, in part, as follows: 'The driver of a motor vehicle, when traveling outside of a business or residence district and under other conditions where necessary to insure safety, shall give audible warning before overtaking a vehicle proceeding in the same direction.' You are further instructed that the place where this accident occurred was outside of a business or residence district, therefore if you find that at the time of, or immediately before, the accident in question the plaintiff Mr. Moore was overtaking the truck driven by Mr. Miller in the same direction then it was the duty of Mr. Moore to give an audible warning before overtaking the said vehicle."

The part of section 528 of the Vehicle Code quoted in this instruction is preceded in the section by this heading: "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:"

Plaintiff argues that he was not overtaking the defendant and therefore was not required by section 528 of the Vehicle Code to sound his horn, and that "the duty to give an audible warning was made absolute by the instruction." The quoted criticism of the instruction is not borne out by its language, for that plainly makes the duty conditional on the jury's finding that plaintiff was overtaking defendant's truck. The instruction does inform the jury that the place where the accident occurred was outside of a business or residence district. This was a fact upon which the Vehicle Code conditioned plaintiff's duty to give audible warning. The defendant therefore had the burden of proving it, in support of his plea of contributory negligence, but he could properly rely for such proof upon the presumption declared by section 758 of the Vehicle Code, as it stood at the time of the trial, before the 1941 amendment, that every highway is outside of a business or residence district. No evidence

controverting this presumption appears in the record; hence the jury were bound to find according to it (Code Civ. Proc., § 1961), and the trial court properly declared to the jury that the fact was as presumed.

Was the plaintiff required to sound his horn under the circumstances appearing in the record? The provision of section 528 of the Vehicle Code on this question, stated as one of the rules governing "the overtaking and passing of vehicles proceeding in the same direction," is that "the driver of a motor vehicle . . . shall give audible warning before overtaking a vehicle proceeding in the same direction." The word "overtaking" means "to come or catch up with in a course or motion." (Webster's New International Dictionary, 2d ed.; *Ringwald* v. *Beene,* (1936) 170 Tenn. 116 [92 S.W. (2d) 411, 413].) Webster's Dictionary also gives as another meaning, "To catch up with and pass, as in an automobile," but we do not think the word is so used in this provision of the Vehicle Code. The introductory language of section 528 refers to both overtaking and passing as if they were separate acts, and so do sections 529, 530, 531, and 533, which deal with the same general subject, while the clause now to be construed refers only to "overtaking." The legislative history of the provision here in question shows that it has been gradually changed for the apparent purpose of accelerating the giving of the signal. In the "Vehicle Act" of 1915, section 20, subdivision (f), it was made the duty of the person operating "an overtaking vehicle" to give the signal "before passing a vehicle proceeding in the same direction." (Stats. 1915, p. 407.) The "California Vehicle Act" of 1923, in section 125, required "the driver of an overtaking motor vehicle" to signal audibly "before passing or attempting to pass a vehicle proceeding in the same direction." (Stats. 1923, p. 557.) By these provisions the vehicle must be in a condition of "overtaking" before any signal was necessary, and at first the signal was to be given "before passing;" later it must be "before passing or attempting to pass." Now the signal must be given "before overtaking." This is obviously intended to denote an earlier stage of the proceedings than that heretofore required, and means, "before coming or catching up with" the other vehicle proceeding in the same direction. The defendant's truck in this case was clearly a vehicle "proceeding in the same direction" as plain-

tiff's automobile, up to the time the truck turned across the street in front of the automobile, its status in that respect not being altered by the mere fact that the truck swerved slightly to the right before turning left. The lines of progress of two vehicles need not be exactly parallel or identical in order to bring them within the meaning of the phrase last quoted. It is sufficient if they are proceeding substantially in the same direction.

The statute does not declare the exact distance or time "before overtaking" at which the audible signal must be given. But the warning is intended for the benefit of the driver of the overtaken vehicle. (*Day* v. *Pickwick Stages System,* (1933) 134 Cal. App. 92, 98 [25 P. (2d) 16].) Its purpose is to warn him that another vehicle is approaching and is about to pass him, and it ought to be given in time to enable him to safeguard himself against the danger of collision. The proper time for such warning is ordinarily a question of fact for the jury. In this case the plaintiff was traveling at a speed considerably greater than that of defendant, had turned left for the purpose of passing him, and was only fifty feet behind him, according to one witness, when the defendant started his U-turn, and there was other traffic in the street, some of which was coming from the opposite direction and close enough to prevent defendant from going over there at the time of the accident. Upon these facts, we cannot say that the jury's conclusion, implied in their verdict, that the proper time for plaintiff to give an audible warning to defendant had arrived and passed while the two vehicles were proceeding in the same direction, is without support in the evidence. Failure to obey the statute in this respect is, of course, negligence as a matter of law. (*Cadwell* v. *Anschutz,* (1935) 4 Cal. (2d) 709 [52 P. (2d) 916]; *Ketchum* v. *Pattee,* (1940) 37 Cal. App. (2d) 122, 131 [98 P. (2d) 1051].) Plaintiff relies on the case last cited to support his argument that the statute did not require him to sound his horn, but it is not in point on that subject. It merely holds that the provision of section 528 of the Vehicle Code which we are considering does not apply to a driver who passes a parked vehicle, because such vehicle is not "proceeding in the same direction"; the decision does not concern itself with the meaning of the word "overtaking" or relate to any facts such as we have here.

The conclusion that plaintiff's negligence in not sound-

ing his horn was one of the proximate causes of the collision likewise finds sufficient support in the evidence. The defendant was not aware of plaintiff's presence on the street or of the fact that any vehicle was nearing and about to pass him. If plaintiff's horn had been sounded, even at the moment before or just after defendant began his left turn, it is reasonably probable that defendant would have heard it and that at the speed he was then going (estimated by him in his testimony at around fifteen miles per hour) he could and would have stopped his turn and kept out of plaintiff's way. The case is much like *Cadwell* v. *Anschutz, supra,* (1935), 4 Cal. (2d) 709, where plaintiff attempted to pass defendant's car without giving any signal and the defendant, also without signal, turned left from the shoulder onto the two-lane pavement. The court held, under the above-mentioned provision of section 25 of the Vehicle Act of 1923, that plaintiff was negligent in not sounding his horn, and further, that, "It is reasonably probable that if plaintiff had sounded his horn before attempting to pass defendant's car, he would have delayed his change of course or have taken appropriate precautions. This being so, it seems clear that plaintiff's negligent act was a contributing factor to the injury," and thereupon reversed a judgment for plaintiff. The same conclusion as to proximate cause must be reached here. We find none of the cases cited by plaintiff controlling here. In *Young* v. *Cerrato,* (1934) 2 Cal. App. (2d) 421, 424 [37 P. (2d) 1063], it appeared that defendant knew of the approach of plaintiff's vehicle behind him and the court upheld a verdict finding that plaintiff's failure to sound his horn was not the proximate cause of the collision. The situation is quite different where defendant does not know of plaintiff's approach. In *Fate* v. *Gross,* (1923) 61 Cal. App. 146, 149 [214 Pac. 465], the plaintiff who had not given warning of his approach was not passing or attempting to pass the defendant, who, after signaling his intention to park his car at the curb, suddenly and without warning turned left in front of plaintiff, who was only 15 feet away. The Vehicle Act then in force required a signal to be given "before passing" and the court held that plaintiff had not violated it, and then added that it was a question of fact for the trial court whether plaintiff could have prevented the collision by sounding a warning, and affirmed the judgment for plaintiff based on a finding that plaintiff was not

guilty of contributory negligence. Here the finding by the trier of facts is the other way and its decision on the question of fact is binding upon us.

Plaintiff requested and the court refused an instruction which quoted to the jury a part of section 526 of the Vehicle Code and informed them that violation of it by defendant constituted negligence. The part of this section so quoted provides that where a roadway is divided into three or more clearly marked traffic lanes, "a vehicle shall be driven as nearly as practical [practicable] entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made in safety." It is contended that defendant violated this provision both when he swerved to the right and when he turned to the left. Upon the evidence it seems more likely that defendant's swerve to the right brought him into compliance with this provision of the code, for he had previously been straddling the line between two lanes, according to the plaintiff. Defendant himself does not clearly dispute this, but possibly means that he was in the right-hand lane before the swerve. On either view of this swerve no violation of this provision of the code by defendant, which could have been a proximate cause of the accident, appears, and no instruction regarding it was needed. Section 526 is plainly intended to regulate the use of lanes, and not the making of turns; hence it does not apply to the left turn. The matter of turns is covered in detail by sections 540 to 546, which are in a chapter headed, "Turning and Starting and Signals on Stopping and Turning," while section 526 is in a different chapter whose heading does not mention turns. Section 544, in the chapter on turns, is the provision applicable to defendant's conduct in making his left turn and it declares, in part: "No person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement." The jury was properly instructed on this provision of the law. No instruction on section 526 was necessary.

Plaintiff argues that defendant's left turn would, when it first began, look to him like a move from one lane to another, and therefore the instruction on section 526 was proper and should have been given. But the application of sections 526 and 544 does not depend on the impression someone else may

have of the driver's conduct; the question is, what is he actually doing? If he is in fact making a turn, as distinguished from a change of lanes, section 544 is applicable and section 526 is not.

Plaintiff also requested an instruction in the words of subdivision (a) of section 670 of the Vehicle Code, relating to brakes. This was not given. This part of section 670 provides that no person shall operate on any highway any motor vehicle unless it is equipped with brakes adequate to stop it on described types of pavement having a specified grade within specified distances for specified speeds. We do not think such an instruction was required in this case. Defendant contends here and may have contended at the trial that plaintiff was going too fast and that this was negligence contributing to the accident. The direct testimony of plaintiff's speed when defendant started to turn fixes it at from thirty-five to forty-two miles per hour. The stopping distances set forth in section 670 for these speeds are all much greater than the distance in which plaintiff tried to stop. Defendant argues from the skid marks that plaintiff was going at even greater speeds, for which no stopping distances are set forth in the section. While plaintiff stated that his car was in good condition, there was no evidence at all as to the distance in which its brakes would stop it at any speed. Such evidence might have enabled the jury to infer something as to plaintiff's speed when he first applied his brakes by comparing such distance with the length of the skid marks and his speed at the time of the collision. But no such inference could be drawn from section 670. While there may be a presumption, as plaintiff suggests, that his brakes were sufficient to comply with that section, there is no presumption that they were not even better. Section 670 merely sets forth minimum requirements with which every car must comply. It does not enable us to determine what is the actual stopping distance of any particular car.

Our conclusion on the points already discussed renders it unnecessary to consider defendant's contentions that plaintiff was guilty of contributory negligence other than his failure to sound his horn, or plaintiff's contention that defendant was negligent as a matter of law. No conclusion we might reach on any of these matters could affect the opinion already

stated that the verdict is sufficiently supported by the evidence of plaintiff's failure to sound his horn.

The judgment is affirmed.

Schauer, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 2, 1942. Curtis, J., and Carter, J., voted for a hearing.