[Civ. No. 17097.   First Dist., Div. Two.   Mar. 29, 1957.]

JOHN M. SEPULVEDA et al., Appellants, v. AYAKO ISHIMARU et al., Respondents.

Morgan & Beauzay for Appellants.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Respondents.

THE COURT.—This is an action for personal injury suffered by plaintiffs Mr. and Mrs. Sepulveda when during the making of a right-hand turn the right rear of their car was hit by the right front of a car driven by defendant Ayako Ishimaru with the consent of its owner defendant George Ishimaru. The verdict was for defendants. Plaintiffs' motion for a new trial was denied and they appealed from the judgment entered on the verdict.

It is not contended that the evidence does not support the verdict, correctly so, as it was in substantial conflict, defendant Ayako Ishimaru testifying that the Sepulveda car made the right turn from the inside lane across her path in the outer lane, whereas plaintiff John M. Sepulveda testified that he duly made the turn from the outer lane after giving a hand-signal. Plaintiffs rely on misconduct of the jury and of counsel for defendants and on errors in rulings on evidence and in instruction.

*Misconduct of the Jury.* On the motion for a new trial an affidavit of plaintiffs' attorney showed that when he was placing a bumper upon the counsel table prior to offering it in evidence in rebuttal as the rear bumper of plaintiffs' car, he heard the juror Austin, who was subsequently chosen

as foreman, say in the jury box: "he can sell that for a fee." Appellants contend that this statement indicated a biased mind. ■ However, at the time counsel did not move for a mistrial or even bring the matter to the attention of the court. When knowledge of the objectionable fact is obtained in time to apply to the court to remedy or correct it, a party may not sit by in silence, taking chances of a favorable verdict and be heard to complain after a hostile verdict only. He will then have waived his right to complain. (*Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237, 253 [116 P. 513]; *Newton* v. *Thomas,* 137 Cal.App.2d 748, 769 [291 P.2d 503]; 3 Witkin, California Procedure, 2054). ■ Moreover, the import, possible prejudicial character and influence on other jurors of the very vague remark of the juror Austin were primarily matters of fact for the trial court. The order denying the new trial decided by implication that the verdict was not materially affected by the matter complained of and that appellants suffered no prejudice through it. *Lafargue* v. *United Railroads,* 183 Cal. 720, 724 [192 P. 538]; *Jensen* v. *Southern Pac. Co.,* 129 Cal.App.2d 67, 80 [276 P.2d 703]).

■ Appellants in their motion for a new trial relied also on an affidavit of a daughter of the juror Velma Collins, to the effect that on April 22, 1955, (the last day of the trial), she accompanied her mother to San Jose to listen to the trial, that during one of the recesses she talked to defendant in the ladies restroom and wished her good luck and that subsequently she sat next to the defendant in the courtroom. Appellants contend that the stated conduct of the daughter necessarily affected the impartiality of the mother as a juror. We don't agree. There is no evidence whatever indicating that the mother during the deliberations of the jury knew that her daughter had that same day spoken to the defendant in the ladies restroom. Hence, that fact in itself is wholly irrelevant. It does not appear that the daughter had ever before met the defendant or that her good wishes were anything more than a formal courtesy. It may be assumed that the juror will have seen that her daughter at some time sat next to the defendant in the courtroom but it is not clear how this fact can have influenced the mother unless the daughter then and there spoke to the defendant or in other ways showed that she was associating with the defendant or sympathized with her. The affidavit does not state anything of the kind, nor does it indicate how long the daughter sat next to the defendant. The fact alone that

a person for some undefined length of time sits next to a party to a law suit does not necessarily have any meaning with respect to the relations or sentiments existing between them. The probable effect on the juror of the in itself inconclusive happening was again a question of fact primarily for the trial court whose implied decision that it did not affect the mother we shall not disturb.

*Misconduct of Counsel.* Many instances of alleged misconduct of defendants' counsel, mainly in their argument to the jury, are relied on by appellants. It is, however, conceded that at no time did counsel for plaintiffs object to any of the conduct complained of or ask the court to admonish the jury to disregard it. ■ "Where the action of the trial court is not thus invoked the alleged misconduct will not be considered on appeal, if an admonition to the jury would remove the effect thereof." (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 368 [184 P. 672, 12 A.L.R. 1007]). "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have." (*Jensen* v. *Southern Pac. Co., supra,* 129 Cal.App.2d at p. 80). The question to be decided is therefore whether any of the instances of misconduct complained of is of such an extreme character. We must consider also that they were submitted to the trial court on the motion for a new trial, the denial of which shows that said court, which is in a better position to evaluate the influence of such conduct, was of opinion that it was not prejudicial.

■ The misconduct which appellants consider most serious was, if misconduct at all, certainly not of such incurable character. It consisted in allegedly erroneously urging in the argument to the jury that the conduct of Mr. Sepulveda in not ascertaining by looking in his rear view mirrow whether he could safely make his turn was negligence as a matter of law, no matter from which lane he made his turn. (Counsel however also told the jury that if the turn was made from the outside lane the failure to look would not be a proximate cause of the accident.) Evidently, if such statement as to the law was in any respect erroneous, as contended by appellants, *it could have been cured by an instruction of the court to that effect.* Appellants urge that objection to said misconduct would have been useless since the court later

instructed in line with counsel's argument. If it could be misconduct to argue in accordance with the law contained in the instruction of the court it could certainly not be prejudicial as the jury must at any rate follow the law as stated by the court and they were so instructed in this case.

Appellants urge that a contention of defendants' counsel "that Mr. Sepulveda has a malady which we lawyers run across quite often and which I call 'law suit-itis'", a contention further elaborated on in the argument, was a deliberate though implied accusation of dishonesty so serious that the failure to object should not preclude it from being raised on appeal. The statement was made in the part of the argument relating to the extent of damages, in which it was expressly admitted that Mr. Sepulveda was hurt to some extent. It was said as a conclusion from an extensive analysis of the evidence regarding the absence of objective symptoms, the appearance of certain symptoms complained of a considerable time after the accident, increased visiting of physicians when the trial drew near, etcetera. The condition to which counsel referred is well known and is called litigation neurosis. (See about it and the frequency of its appearance especially as compensation neurosis I Campbell Workmen's Compensation, p. 325 et seq.) Because of is psychoneurotic character it does not imply actual dishonesty. An admonition by the court if asked could certainly have clarified this. Later, counsel for defendants himself declared: "I think that he thinks he was injured; I don't believe he is deliberately falsifying his testimony." If appellant's argument in this respect could be considered at all as misconduct it would be a matter of imprudent expression not of deliberate and incurable wrongdoing in bad faith.

No good purpose would be served by treating other instances of conduct of counsel complained of separately. We have considered them all and concluded that if any of them constituted misconduct, the effect thereof would have been cured by admonition from the court.

*Errors of Law.* Appellants first point out as such the striking of some testimony of Mr. Sepulveda. When he testified: "I knew I was going to make a right-hand turn. I knew—saw the reflection of the headlights and I thought all that was necessary was to put my hand out and make my turn," counsel for defendants objected "to what he thought as his conclusion." The court ordered: "Strike it out." Appellants contend that in this manner his testimony as to

what he was doing in this regard had been stricken from the record. Obviously, only his conclusion as to what was required was stricken. Shortly before he had testified without objection or striking: "I started applying my brakes. I put my hand out to make a right-hand turn." There was neither error nor prejudice.

2. When Mr. Sepulveda was questioned as to whether he made any remark, when after the accident defendant Ayako Ishimaru told the investigating police officer in his presence that plaintiff had made his right turn directly in front of her from the inside lane, he testified: "No, I didn't think it was the time for me to say anything there. He was interviewing her and I—I was given to understand to begin with that he was interviewing her and he would talk to me and that was it." Counsel for defendants then objected to the part starting with "I was given to understand" as hearsay, the court ruled: "The point beginning at 'given to understand' is objectionable. Strike it out and start from there." The trial continued as follows:

"Q. (By Mr. Bergna) [attorney for plaintiff] Did the officer say anything to you with reference to your—what you should do while he was talking to the lady? Let's put it that way.

"A. He told *he* was going to interview us separately, so my understanding right then—

"Mr. Bergna: Not your understanding. Counsel is right there.

"The witness: He told me he was going to talk to her— he was going to talk to us separately, —"

Appellant points out that the part stricken was not hearsay because it was not intended to prove the truth of the statement of the police officer, but only the fact that the statement was made and that Mr. Sepulveda's understanding of what was said by the officer was relevant. Objection was not sustained to what Mr. Sepulveda *understood* but to what he testified he was *given to understand*. Such was an objectionable statement of the conclusion of the witness as to what the officer wanted him to understand. As immediately thereafter the witness was permitted to testify to what the officer actually said to him, no prejudice whatever could have resulted, even if the sentence had been erroneously stricken. It was plaintiffs' attorney himself who later, without any ruling by the court on this point, prevented the witness from testifying to what he understood.

■ Finally, appellants assign error in instruction consisting in reading to the jury sections 544 and 526 of the Vehicle Code without explanation or restriction other than BAJI instruction 149.1 to the effect that from the violation of such section a presumption of negligence arises which is not conclusive but can be overcome by proof that the conduct was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. Appellants urge that it was held in *Moore* v. *Miller,* 51 Cal.App.2d 674 [125 P.2d 576], that section 526 does not apply to a right-hand turn and that under the same rationale the requirement of section 544 that no turn may be made until such movement can be made with reasonable safety does not apply to a right turn. The import of the decision in *Moore* v. *Miller, supra,* 51 Cal.App.2d 674, should have been explained to the jury in the instructions. The contention is wholly without merit. *Moore* v. *Miller, supra,* 51 Cal.App.2d at pages 682-683, holds that section 526 is plainly intended to regulate the use of lanes, and not the making of turns and that section 544 was the provision applicable to the conduct of defendant in that case, who made a left turn. Hence, it was not error to refuse to instruct on section 526 where the jury was duly instructed on section 544. The case does not distinguish between right and left turns and does not imply in any way that the clear provision of section 544 would not be applicable to right turns. The most that could be derived from the case is that no instruction on section 526 was required unless in the movement of the vehicles at some time a changing of lanes was involved. Appellants cannot complain of the giving of an instruction on section 526 because it does not appear from the record at whose request the instruction was given, in which case it will be presumed by the appellate court to have been given at appellant's own request. (*Lynch* v. *Birdwell,* 44 Cal.2d 839, 847 [285 P.2d 919] ; *Smith* v. *Pellissier,* 134 Cal.App.2d 562, 570-571 [286 P.2d 66].) The giving of the instruction was clearly not prejudicial even if it may have been superfluous as sections 526 and 544 are based on the same principle and do not conflict.

■ Appellants do not in their opening brief complain of the refusal to give their requested instruction Number 28, which instruction is cursorily mentioned in their closing brief. It is urged in the latter brief that appellants were at any rate entitled to an instruction that failure to comply with a statute does not constitute contributory negligence

unless it is shown that the violation was the proximate cause of the harm. In *Landrum* v. *Severin,* 37 Cal.2d 24, 28 [230 P.2d 337], it was held that it was not prejudicial error not to repeat a statement of the rule of proximate cause in a particular instruction concerning the duty of a party under a section of the Vehicle Code, if the court as part of the charge gave full general instructions upon the meaning of proximate cause and the requirement that negligence must proximately contribute to the injury. Such instructions were duly given in this case.

We do not find any reversible error in the record.

Judgment affirmed.