[No. A056085. First Dist., Div. Five. Feb. 15, 1994.]

LINDA FINCH, Plaintiff and Appellant, v.
BRENDA RACEWAY CORPORATION et al., Defendants and
Appellants.

548

## Counsel

John D. Fouts and Robert Musante for Plaintiff and Appellant.

Bronson, Bronson & McKinnon, Robert J. Stumpf, Jr., and José H. Garcia for Defendants and Appellants.

## Opinion

**HANING, J.**—Defendants/appellants Brenda Raceway Corporation, doing business as Sears Point International Raceway, and Harvey "Skip" Berg appeal a judgment by jury trial awarding plaintiff/respondent Linda Finch (Finch) $476,250 in her action for wrongful termination based on violation of Labor Code section 970,[1] breach of contract, and negligent misrepresentation. Defendants' principal claims of error are insufficiency of the evidence to support the verdict and excessive damages. Finch cross-appeals from the order granting a new trial on damages only on her cause of action for violation of the Labor Code. She contends the order did not comply with statutory requirements that it state in writing the grounds for granting the new trial.

---

[1]Unless otherwise indicated, all further statutory references are to the Labor Code.

## FACTS

Pursuant to established rules of appellate review, we report the facts in the light most favorable to the prevailing party (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]), recognizing that conflicts in the evidence, its weight and the credibility of the witnesses are matters for the jury's resolution. (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143].)

Berg is the principal shareholder of Brenda Raceway Corporation, which operates Sears Point International Raceway (Sears Point) near the Town of Sonoma. In April 1986 Berg fired the general manager of Sears Point because he was dissatisfied with the manner in which the manager accounted for the cash from track events. To assist Berg in selecting a new general manager, an acquaintance gave him names of potential replacements. The names were listed in order of qualification. Finch's name was on the "B" list, defined as people who were as qualified as those on the "A" list but without as much experience. Finch had been unemployed since October 1985, but she had held auto-related jobs for the previous 11 years, including general manager of Laguna Seca Raceway, editor of Auto Week magazine, and promotional manager for Goodyear racing products. Berg offered the post to an "A" list candidate from Michigan, but that person was unable to accept it because of a family emergency. However, both Berg and his first-choice candidate considered the latter's unavailability temporary.

Finch, who was living in San Jose at the time, learned of the opening for a general manager at Sears Point from the president of the International Motor Sports Association (IMSA) in the spring of 1986, but due to the perceived instability of Sears Point's management, she did not initially contact Berg about the opening. She changed her mind after being urged to apply by both the IMSA president and the executive steward of the Sports Car Club of America. During their first interview in late April or early May, Berg informed Finch that he wanted a manager who would "take [the track] off my back," i.e., stabilize the management of Sears Point. Finch in turn emphasized that she was looking for job security and wanted permanent employment where she could stay for several years. When she expressed her concern about the dismissal of the previous manager, Berg assured her he had a long-range commitment to his employees and Sears Point, and if anything should happen to Sears Point, he would find a position for her at a land development project he owned. Berg used the phrase "lifetime employment" during the interview, as he had with other employees.

At their second interview in late June 1986, Finch reiterated her concerns about job security, and Berg repeated his assurance of long-term commitment to employees. He said nothing about the job being temporary. He

offered her the job with the idea that she would stay as long as she did a good job, and she was told that she would be the permanent general manager. Finch's starting annual salary was $36,000, which Berg acknowledged to be low but which he explained was necessary due to cash flow problems related to the previous manager. Berg promised her a substantial raise the next year and a share of the track profits. After Finch accepted the position she was contacted by another company at which she had applied for a better paying job closer to San Jose. Despite being urged by the company's representative to keep her application active, she removed herself from consideration because of her commitment to Sears Point.

After hiring her in late June 1986, Berg informed the racing community that Finch was his permanent general manager. Articles in the local press and trade journals made no reference to her selection as temporary. However, Berg told members of the Sears Point staff that Finch was only acting general manager and that the first-choice Michigan candidate would come to Sears Point when his family emergency was resolved.

Finch was terminated in early November 1986. She was given a month's severance pay and use of a car. Berg hired the Michigan candidate to replace her, at a $50,000 annual salary, to be increased to $85,000 the following year, plus a car. Between November 1986 and March 1989, Finch was employed in several lower-paying jobs. In March 1989 she took a job as transportation coordinator for the Volunteer Center of Sonoma County, at an annual salary of $33,750, a position she held at the time of the October 1991 trial. She testified that her abrupt termination damaged her reputation in the close-knit auto racing community to the extent that she was unable to obtain reemployment in that field.

The jury awarded Finch $3,000 in economic damages and no noneconomic damages in her action for breach of section 970, which prohibits, inter alia, persuading a person to change work by means of false representations concerning the length of employment. She also received $65,000 economic damages in her action for breach of contract, and $158,750 in economic damages, plus $317,500 in noneconomic damages in her action for negligent misrepresentation.

Defendants' motion for judgment notwithstanding the verdict on the ground of insufficient evidence was denied. Their motion for new trial was granted on Finch's cause of action for breach of section 970, and otherwise denied. Finch's request that the damages be doubled, pursuant to section 972, which provides that violations of section 970 render the defendant liable for double damages, was denied.

## DISCUSSION

### I

Finch prevailed on the counts in her complaint alleging (1) a violation of section 970, (2) breach of contract, and (3) negligent misrepresentation. However, all three counts, or theories of recovery, are based on her contention that she was persuaded to accept employment with defendants by false representations concerning the length of time such work would last, in violation of section 970, and thereby suffered damages. In addressing her assignments of error on appeal, we are guided by two fundamental principles: First, "[r]egardless of the nature or number of legal theories advanced by the plaintiff, [s]he is not entitled to more than a single recovery for each distinct item of compensable damages supported by the evidence." (*Tavaglione* v. *Billings* (1993) 4 Cal.4th 1150, 1158-1159 [17 Cal.Rptr.2d 608, 847 P.2d 574]); second, " '[w]here there are *several counts* or causes of action, a general verdict will stand if the evidence supports it on any one sufficient count.' " (*Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271 [261 Cal.Rptr. 204].)

Since all three counts on which Finch prevailed are based on the *same* conduct of defendants, we shall consider their assignments of error accordingly.

### II

■ Contrary to defendants' contention, there is substantial evidence supporting a violation of section 970. To establish such a claim, Finch had to prove that defendants made a knowingly false representation regarding the length of her employment as general manager of the racetrack, with the intent to persuade her to move there from another place to take the position. During her interviews for the general manager's position, Finch expressed concern on a number of occasions about job security and was repeatedly reassured by Berg that the job was permanent. Berg used terms such as "lifetime employment" and "long-range commitment to employees," and promised a substantial raise after one year of employment. However, he told other members of the staff that he was hiring her only temporarily, until his first-choice candidate from Michigan was able to move to California after resolution of his family emergency. When that candidate appeared on the scene, Finch was terminated and he was hired as her replacement. This satisfies the substantial evidence test.

### III

■ In reliance on *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] and *Branch* v. *Homefed Bank* (1992) 6

Cal.App.4th 793 [8 Cal.Rptr.2d 182], defendants next contend that Finch is not entitled to noneconomic damages, and that her sole remedy for such, if one exists, is within the Workers' Compensation Act. *Foley* held generally that wrongful termination from employment constitutes a breach of contract rather than a tort, thereby limiting the wrongfully terminated employee to contract damages. However, an exception exists when the termination occurs in violation of a public policy involving a duty affecting the public at large, rather than one owed to or imposed solely upon the parties to the dispute (*Hunter* v. *Up-Right, Inc.* (1993) 6 Cal.4th 1174, 1180 [26 Cal.Rptr.2d 8, 864 P.2d 88]; *Foley* v. *Interactive Data Corp.*, *supra*, at pp. 665-671; *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), and which has a constitutional or statutory basis. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Section 970 states the applicable public policy, the violation of which is punishable as a criminal offense (§ 971), and renders a defendant liable to the employee for double damages. (§ 972.) Consequently, *Foley* does not bar Finch's civil action.

*Branch* supports Finch rather than defendants. *Branch* held that damages for emotional distress are not recoverable when a negligent misrepresentation causes only economic injury. However, it recognized that "in cases of *intentional* misrepresentation recovery for emotional distress need not be accompanied by physical injury." (*Branch* v. *Homefed Bank*, *supra*, 6 Cal.App.4th at p. 799, italics added.) The violation of section 970 constitutes an intentional misrepresentation—it involves a "knowingly false representation[ ]."

IV

Defendants claim the damages on Finch's action for negligent misrepresentation are excessive, and on cross-appeal Finch contends the court erred by not doubling her damages pursuant to section 972, which provides that a violation of section 970 renders the defendant "liable to the party aggrieved, in a civil action, for double damages . . . ." The jury was given general verdict forms for each cause of action but was not instructed on any allocation of damages except that Finch was not entitled to noneconomic damages on her action for breach of contract. The jury found in favor of Finch as follows: (1) For violation of section 970—$3,000 in economic damages and no noneconomic damages; (2) for breach of contract—$65,000 economic damages; (3) for negligent misrepresentation—$158,750 economic damages and $317,500 noneconomic damages.

The trial court granted a new trial on damages for the Labor Code violation. It then ruled that the damages for breach of contract duplicated the

damages for negligent misrepresentation and were therefore subsumed therein. Judgment was entered accordingly in favor of Finch for $476,250 plus costs and prejudgment interest, the latter based on defendants' rejection of Finch's offer under Code of Civil Procedure section 998 to settle for less than the verdict she received at trial. However, both parties agree that the new trial order was erroneous for lack of compliance with Code of Civil Procedure section 657, which requires a specification of grounds when granting a new trial for excessive or inadequate damages.

█ The difficulty we face in attempting to resolve the respective contentions of the parties concerning the size of the award and the judgment stems from the form of the verdict and the manner in which it was handled below. As we stated previously, and in light of the jury's finding that defendants violated section 970, Finch's damages cannot be segregated among the causes of action as they were. Her damages flowed from the same tortious conduct; the only evidence of conduct which supports the claims for breach of contract and negligent misrepresentation is that which constitutes the violation of section 970. Consequently, she is entitled only to a single recovery for each item or element comprising her damages. (*Tavaglione* v. *Billings, supra*, 4 Cal.4th at pp. 1158-1159.) █ Once her actual damages are determined, she is entitled by section 972 to have them doubled. (*Seubert* v. *McKesson Corp.* (1990) 223 Cal.App.3d 1514, 1522-1523 [273 Cal.Rptr. 296].)[2]

█ However, the verdict forms submitted to the jury permitted it, as it did, to find for Finch on each theory of recovery and allocate the damages among them. The jury was not instructed that Finch was entitled to only one total award of damages under any single theory of recovery. Rather, it was led to believe that the damage award was to be allocated among the various theories and totalled to achieve a final result. As a consequence, the verdicts are legally inconsistent. For example, under the factual matrix of this case, economic damage awards of $3,000 for the violation of section 970, $65,000 for the breach of contract and $158,750 for negligent misrepresentation cannot be reconciled. But the jury was not instructed that the damages were not cumulative. The trial court recognized this, in part, in its ruling that the damages for breach of contract were subsumed within the damages for negligent misrepresentation. Nevertheless, it then treated the violation of section 970 as giving rise to discrete, additional damages, and entered its

---

[2]In ruling on the various posttrial motions the trial court denied Finch's motion under section 972 to double the damages. We cannot determine from the record whether the denial was based on the court's belief that the double damages were discretionary or whether section 972 applied only to the cause of action for violation of section 970 on which it granted a new trial for damages. In either event, as we have explained, the ruling was erroneous. (*Seubert* v. *McKesson Corp., supra*, 223 Cal.App.3d at pp. 1522-1523.)

order for a new trial on damages thereunder. These rulings were in error. First, as we have stated, under the facts of this case the damages all flow from the same conduct and are not allocable among the various theories of recovery. Second, the amount of damages was an issue for the jury. If the trial court felt the damages were excessive, it could not simply modify the award and enter judgment on the modified amount. It could only reduce the damages as a condition to denying a motion for new trial, or grant a new trial. (See *Wood* v. *Alves Service Transportation, Inc.* (1961) 191 Cal.App.2d 723, 733 [13 Cal.Rptr. 114].)

At the hearing on the posttrial motions, the attorneys themselves manifested confusion about this allocation of damages, and their arguments to the court appear to have added to the confusion and misled the court in its rulings. We do not imply any intentional misrepresentation—just the opposite—certain erroneous assumptions were assumed or shared, and the focus strayed from the fundamental fact that only one cause of action existed, which gave rise to only one award of damages. As a result, we conclude that no meaningful posttrial review of the damages occurred, and the matter must be remanded.

V

■ In addition to insufficient evidence and excessive damages, defendants moved for new trial on the ground of irregularity in the trial, specifically misconduct in (1) communicating defendants' wealth, (2) personal attacks on defendants' character, and (3) misstatements regarding the evidence. We conclude a new trial on the ground of irregularity would not have been warranted. First, defendants did not object to the misconduct at the time it occurred and therefore have waived their right to object. (See *Sepulveda* v. *Ishimaru* (1957) 149 Cal.App.2d 543, 547 [308 P.2d 809].) Second, the remarks of counsel were within the bounds of permissible commentary about the testimony of defendants or the credibility of defendants' witnesses.

DISPOSITION

That portion of the judgment awarding damages is reversed and the cause remanded for reconsideration of the posttrial motions relating to the amount

of the damage award, in accordance with the views expressed herein.[3] The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

Peterson, P. J., and King, J., concurred.

Petitions for a rehearing were denied March 9, 1994, and the petition of defendants and appellants for review by the Supreme Court was denied May 26, 1994.

---

[3]The trial court may, for example, grant a new trial on damages, condition a new trial on plaintiff's acceptance of a remittitur, etc. These matters are best left to the judgment of the trial court.