Filed 9/1/21  Y.Z. v. N.Z. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Y.Z.,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>N.Z.,<br><br>        Defendant and Respondent. | D078018<br><br><br><br>(Super. Ct. No. 19FL000904C) |

APPEAL from an order of the Superior Court of San Diego County, Paula S. Rosenstein, Judge.  Affirmed.

Pauline E. Villanueva for Plaintiff and Appellant.

N.Z., in pro. per., for Defendant and Respondent.

I

INTRODUCTION

Y.Z. (Husband) appeals an order renewing a domestic violence restraining order (DVRO) prohibiting him from harassing, assaulting, or contacting his ex-wife N.Z. (Wife) and her child.  Husband contends Wife's request to renew the DVRO was untimely and substantial evidence did not

support the renewal of the DVRO.  We reject these contentions and affirm the challenged order.

## II

## BACKGROUND

### A

### *Initial DVRO Proceedings*

Husband and Wife got married in 2014.  He had two children from a prior marriage, she had one child from a prior marriage, and they had one child together after they got married to one another.

On January 17, 2019, Wife filed a request for a DVRO against Husband.  In the request, Wife stated she and Husband had recently gotten into an argument about finances.  During the argument, Husband allegedly yelled at Wife, pushed her to the ground, grabbed her phone from her hand, smashed her phone on the ground, and threatened to kick her and her child from the prior marriage out of the family home.  Wife averred she suffered aches and pains from the attack and was concerned for her safety.  Wife supplemented her DVRO request with a police report of the incident.

Husband filed a response to Wife's request for a DVRO.  He averred they were in the midst of a rocky divorce.  He admitted they had a disagreement about finances and that he took Wife's phone, but claimed he did so only to determine whether she was covertly recording the argument.  He denied pushing her or threatening to kick her out of the home.  He stated she had a history of making false accusations against him, including an accusation that he raped her.  He stated he believed she filed the request for a DVRO to gain leverage in the couple's divorce proceedings.  Husband stated he believed Wife also wanted to portray herself as a victim of domestic violence to obtain a green card.

2

The court held an evidentiary hearing on February 5, 2019, which it continued to March 25, and then to April 30. During the portion of the hearing that was reported, Husband testified about the phone-grabbing incident discussed in the DVRO request.[1] He admitted he took Wife's phone from her without her permission. However, he denied throwing the phone and claimed he took it to confirm she was not recording the conversation.

Husband also testified about a separate argument that took place in September 2018. During the argument, Husband stopped the vehicle he was driving, walked to the passenger side of the vehicle where Wife was seated, pulled her out of the vehicle, returned to the driver seat, and drove away without Wife.

At the end of the evidentiary hearing, the court found Husband abused Wife when he pulled her from the vehicle and when he grabbed her phone. The court issued a DVRO generally prohibiting Husband from harassing, assaulting, or contacting Wife and her child from a prior marriage, but permitted peaceful contact as necessary to effectuate court-ordered child visitation. The court opined the abuse seemed "very much related to the ending of [the] marriage" and therefore limited the DVRO to one year in duration. The DVRO was scheduled to end on April 29, 2020.

In February 2020, the couple's divorce proceedings were finalized.

B

*DVRO Renewal Proceedings*

On May 27, 2020, Wife filed a pro se request to permanently renew the DVRO. In the request, Wife averred Husband "came close to [her] new

---

[1] The February 5 and March 25 proceedings were not reported. The court minutes indicate Wife testified at the evidentiary hearing on one or both of these dates.

3

residence" while the DVRO was in effect. She averred he was emotional, got angry easily, and denigrated her to her friends and others. She alleged he would not give her access to their shared child for parenting time unless she went to his house to pick the child up. Further, she averred he wrote a letter to an unidentified congressman to try to get her deported from the country.

Husband filed a pro se response to Wife's request to renew the DVRO. He averred there was "new evidence" showing the abuse giving rise to the DVRO was fabricated. He denied violating the DVRO, going near Wife's residence, or depriving her of access to their child. He also denied writing to a congressman about her immigration status. According to Husband, Wife wanted to renew the DVRO to bolster her efforts to obtain a green card.

Wife testified at the hearing on her request to renew the DVRO. Referring to events that occurred before the issuance of the DVRO, she testified Husband withdrew his support for her green card application without telling her. Wife testified Husband also violated the DVRO in two ways—first, by contacting her ex-husband to conspire to get her put in jail; and second, by asking her to pick up and drop off the couple's shared child at Husband's house. According to Wife, Husband sexually abused her in the house and she never wanted to go back there. Wife testified Husband disparaged her to others, including her friends and their child's teacher. Further, Wife testified Husband sent her excessive text messages relating to the custody and care of their child. Wife repeatedly testified she was afraid. She testified she believed there was a "great possibility" of future abuse due to her past traumatic experiences, Husband's anger about the DVRO, and the fact she and Husband would remain in contact with one another for years to come while coparenting their child.

4

Husband testified at the DVRO renewal hearing as well. He devoted much of his testimony to denying or trying to explain the accusations underpinning Wife's initial request for a DVRO. However, he also responded to the testimony Wife gave at the renewal hearing. In response to Wife's accusation that Husband violated the DVRO, he denied coming close to Wife's residence and testified he contacted her ex-husband because the two of them were friends. Husband denied sexually abusing Wife and denied trying to force her to come to his house. He testified he withdrew his support for Wife's green card application because they were separating. Further, he denied writing to a congressman about Wife's immigration status or otherwise trying to get her deported.

After receiving this testimony, the court found it was "not clear" whether Husband violated the DVRO, but noted there was a "potential violation." The court stated the "immigration issue [was] unclear" as well, but opined the prospect of deportation must have been "very serious and very scary" for Wife. Despite the apparent lack of clarity pertaining to these issues, the court found Wife demonstrated a reasonable apprehension of future abuse. In particular, the court expressed concern about the general tenor of the interactions between Husband and Wife. It also voiced concern that Husband and Wife would be interacting with one another for years due to their coparenting responsibilities. Based on these findings and concerns, the court issued a renewed DVRO for a period of five years. Husband appealed the DVRO renewal order, which is the subject matter of this appeal.

A few weeks after the trial court renewed the DVRO, Husband moved to set aside the judgment and for a new trial. Of relevance here, Husband asserted Wife did not timely request a renewal of the DVRO within the three-month window prior to the expiration of the DVRO—a purported error of law

5

warranting a new trial (Code Civ. Proc., § 657(7)).  The court did not resolve this motion by the time Husband appealed the order renewing the DVRO. However, on our own motion, we take judicial notice that the trial court denied Husband's motion.  (Evid. Code, §§ 452, subd. (c), 459.)  Husband separately appealed the order denying his new trial motion, but then requested dismissal of the appeal from that order.  At Husband's request, we dismissed the appeal from the order denying the new trial motion.

III

DISCUSSION

A

*Domestic Violence Prevention Act*

The Domestic Violence Prevention Act (Fam. Code, § 6200, et seq.)[2] (DVPA) "permits the trial court to issue a protective order 'to restrain any person for the purpose' of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved; the petitioner must present 'reasonable proof of a past act or acts of abuse.' " (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820.)  Abuse is "not limited to the actual infliction of physical injury or assault."  (§ 6203, subd. (b).)  Rather, it includes a broad range of behaviors such as harassing, threatening, or disturbing the peace of another person, and, of relevance here, destroying a person's personal property.  (§§ 6203, subd. (a)(4), 6320.)  The type of restraining order available under the DVPA is referred to herein as a DVRO.

Upon the request of a party, a court can renew a DVRO permanently or for a period of five years.  (§ 6345, subd. (a).)  "The request for renewal may be brought at any time within the three months before the expiration" of the DVRO.  (*Ibid.*)  To obtain a renewal, a protected party need not establish that

---

2    Further undesignated statutory references are to the Family Code.

6

there has been "further abuse since the issuance of the original order . . . ." (*Ibid*.) Rather, the party must demonstrate, by a preponderance of the evidence, that he or she has a "reasonable apprehension of future abuse." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1279, 1283, 1290 (*Ritchie*).) "[T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Id*. at p. 1290.) A party's subjective, albeit unreasonable, apprehension of future abuse is insufficient standing alone to warrant renewal of a DVRO. (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 874.)

B

*Husband Forfeited His Timeliness Argument*

As noted, a request to renew a DVRO may be brought at any time within three months before the expiration of the DVRO. (§ 6345, subd. (a).) Here, the DVRO was scheduled to expire on April 29, 2020. However, Wife did not file her renewal request until May 27, 2020—28 days after the DVRO expiration date. Husband's main argument on appeal is that the DVRO renewal should be reversed because Wife's renewal request was untimely.

In response, Wife contends her renewal request was timely due to various emergency rules that were promulgated by the Judicial Council and general orders that were adopted by the Superior Court in response to the ongoing emergency related to the COVID-19 pandemic.[3] Broadly speaking, the emergency rules and general orders performed two functions of relevance here. First, they provided certain extensions of the duration of existing

---

[3] The emergency rules related to the COVID-19 pandemic are set out in the California Rules of Court, Appendix I.

7

restraining orders such as DVROs.  Second, as a means to account for court closures relating to the pandemic, they declared several weeks of court holidays for purposes of computing parties' filing deadlines.

We do not consider Husband's timeliness argument because he did not present the argument in the trial court.  "Failure to raise specific challenges in the trial court forfeits the claim[s] on appeal.  ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'  Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court.  Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived.  [Citations.]' "  [Citation.]  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.  [Citation.]  In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . ." ' " (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

In an attachment to Husband's opposition to the renewal request, Husband briefly noted—under a section captioned "Background"—that the DVRO "expired" on April 29, 2020.  However, he never argued the renewal request was untimely under section 6345, subdivision (a), or that the court should deny the renewal request on that basis.  Husband's fleeting reference to the "expired" nature of the DVRO was not sufficiently specific to alert the trial court to Husband's timeliness claim, or to give Wife a reasonable

8

opportunity to contest the argument in the proceedings below. Thus, Husband is precluded from asserting his timeliness argument on appeal.[4]

In an effort to avoid the forfeiture doctrine, Husband claims we can decide his argument on appeal, notwithstanding his failure to present the argument below, because the trial court had no jurisdiction to renew the DVRO. According to Husband, the asserted error was jurisdictional because the Legislature intended "to set a firm deadline by which [a petitioner must] file a request for a renewal of [a] restraining order."

Jurisdiction in its fundamental sense refers to "the power of the court over the subject matter of the case. [Citation.] A lack of fundamental jurisdiction is the ' " ' "entire absence of power to hear or determine the case." ' " ' [Citation.] Because it concerns the basic power of a court to act, the parties to a case cannot confer fundamental jurisdiction upon a court by waiver, estoppel, consent, or forfeiture. [Citation.] Defects in fundamental jurisdiction therefore 'may be raised at any point in a proceeding, including for the first time on appeal . . . .' " (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 (*Quigley*).)

We are not persuaded the alleged error was jurisdictional such that we should excuse Husband's forfeiture. As an initial matter, Husband has provided no legal authority to support his claim of jurisdictional error.

Further, Husband's argument that the court granted improper relief in violation of a statutory limitation is, in essence, a claim the court acted *in*

---

[4] Husband also did not preserve his timeliness argument by asserting it in his motion for a new trial. (*Finch v. Brenda Raceway Corp.* (1994) 22 Cal.App.4th 547, 556 [defendants waived attorney misconduct arguments by raising them for first time in motion for new trial]; *Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 865, disapproved on other grounds by *People v. Ault* (2004) 33 Cal.4th 1250, 1272, fn. 15 [waiting until motion for new trial to challenge hearsay statements constituted waiver of objection].)

9

*excess* of its jurisdiction—not an argument the court lacked *fundamental* jurisdiction. (See *Quigley*, *supra*, 7 Cal.5th at p. 807 [" ' "We have described courts that violate procedural requirements, order relief that is unauthorized by statute or common law, or otherwise " 'fail[ ] to conduct [themselves] in the manner prescribed' " by law as acting " 'in excess of jurisdiction.' " ' "].)

An act taken in excess of jurisdiction, in contrast to an act taken without fundamental jurisdiction, "is ' "valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time." ' " (*Quigley*, *supra*, 7 Cal.5th at p. 813.) Because Husband did not raise a specific timeliness objection below, he has forfeited his claim that the court acted in excess of its jurisdiction by renewing the DVRO.

C

*Substantial Evidence Supported the DVRO Renewal Order*

Husband also argues that substantial evidence did not support the order renewing the DVRO. In particular, Husband challenges the sufficiency of the evidence supporting the trial court's factual finding that Wife harbored a reasonable apprehension of future abuse.

In assessing the sufficiency of the evidence supporting the trial court's factual finding, we apply a substantial evidence standard of review. (*In re Marriage of L.R. & K.A.* (2021) 66 Cal.App.5th 1130, 1146.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) The court's task is to decide " 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the [trial] court's finding. [Citation.] '[It] must accept as true all evidence . . . tending to establish the correctness of the trial court's

10

findings . . . , resolving every conflict in favor of the judgment.' " (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822–823.) If substantial evidence exists, " ' "it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." ' " (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 33.) "In many domestic violence cases, . . . the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact: 'The testimony of one witness, even that of a party, may constitute substantial evidence.' " (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119.)

Applying this deferential standard of review, we conclude substantial evidence supported the trial court's finding that Wife had a reasonable apprehension of future abuse. In assessing the reasonableness of the protected party's apprehension of future abuse, a court "ordinarily should consider the evidence and findings on which that initial order was based in appraising the risk of future abuse should the existing order expire." (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) "[T]he mere existence of a protective order, typically issued several years earlier, seldom if ever will provide *conclusive* evidence the requesting party entertains a 'reasonable apprehension' of future abuse of any kind should that order expire. But the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test.' " (*Id.* at p. 1291.)

The abuse giving rise to the DVRO in this case supported the DVRO renewal because it occurred on multiple occasions. In one instance, Husband physically abused Wife when he dragged her from a vehicle and forcefully dropped her onto the street. In the other instance, Husband grabbed a cell

phone from Wife's hand in the midst of a heated argument. Further, in her request for the DVRO, Wife averred Husband pushed her to the ground during the phone-grabbing incident, causing her to suffer aches and pains as a result. The fact the DVRO was predicated on more than one instance of abuse—including at least one instance of physical force—bolstered the court's finding that Wife's fear of future abuse was reasonable.[5]

Another potentially relevant consideration in determining the reasonableness of the protected party's fear of abuse is whether there were "any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order? Or have there been no significant changes or even perhaps changes that enhance the opportunity and possibility of future abuse?" (*Ritchie, supra,* 115 Cal.App.4th at p. 1291.) We discern at least two reasons to believe the circumstances between the parties have not significantly changed since the issuance of the initial DVRO.

First, Wife testified at the DVRO renewal hearing that Husband disparaged her to other individuals, including her friends and their child's teacher, after the court issued the initial DVRO. This fact demonstrates that Husband has not "moved on" with his life and that he still harbors animosity toward Wife. Given the past incidences of domestic abuse, including use of physical force, Husband's verbal disparagement of Wife to others tends to establish the reasonableness of Wife's fear of future abuse.

---

[5] We are constrained in our ability to discuss the full evidentiary record supporting the grant of the initial DVRO because, as previously noted, the hearings for the initial DVRO proceedings were not reported in full.

Second, Husband and Wife coparent a child together. The trial court commended the parties for having generally amicable custodial exchanges with the child thus far. However, it expressed concern about the potential complications and conflicts arising from the parties' ongoing coparenting responsibilities. The court, which witnessed firsthand the credibility and demeanor of the parties, also opined that it was "concerned about the . . . interactions between the two" parties. The fact the parties will be forced to live their lives in an interconnected manner for years into the foreseeable future, despite the apparent tension between them, adds to the reasonableness of Wife's fears about future abuse.[6] (See *Ritchie, supra*, 115 Cal.App.4th at p. 1291.)

In urging us to reverse the order renewing the DVRO, Husband points to a number of considerations that he claims cut against the reasonableness of Wife's apprehension of future abuse. He cites a transcript from the initial DVRO hearing during which the court stated the abuse Husband perpetrated against Wife was not "the most violent." He claims there have been changed circumstances since the issuance of the DVRO—namely, the couple's divorce proceedings have been finalized. Further, he argues the renewal of the DVRO will impose burdens on him by damaging his reputation at work and impeding his ability to coparent the couple's shared child.

---

[6] The trial court made the following observation about the parties in its order denying Husband's motion for a new trial: "The [c]ourt found that [Wife] was and is in reasonable apprehension of future abuse based not only on the [parties'] testimony but also on the affect, attitude, and body language each [party] displayed during the hearing. [Husband] was controlling, insistent, and demanding throughout and [Wife] appeared to be very apprehensive and fearful. The [c]ourt also noted that [Husband] was exhibiting very similar conduct during [the new trial] hearing."

13

At base, Husband's argument is that the trial court should have given greater weight to his evidence, given him greater credibility as a witness, and given Wife less credibility as a witness. However, " '[i]t is axiomatic that an appellate court defers to the trier of fact on [factual] determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. [Citation.] "Issues of fact and credibility are questions for the trial court." [Citations.] It is not an appellate court's function, in short, to redetermine the facts.' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

Given the applicable standard of review, we decline to reexamine the evidence and redetermine the facts as Husband requests. Our sole responsibility is to decide whether there was any substantial evidence, contradicted or uncontradicted, to support the trial court's findings. (See *Hernandez v. Jensen* (2021) 61 Cal.App.5th 1056, 1064 [" 'Where findings of fact are challenged on appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.' "].) For the reasons already discussed, there was substantial evidence supporting the trial court's factual findings. On this basis, we affirm.[7]

---

[7] Without citation or substantiation, Wife's appellate brief references numerous additional acts of abuse allegedly perpetrated by Husband. In determining there was substantial evidence to support the DVRO renewal, we do not rely on any of the extra-record matters discussed in Wife's appellate brief.

## IV
## DISPOSITION

The order is affirmed.  Respondent N.Z. is entitled to her costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


DO, J.