Filed 6/29/22; Certified for Publication 7/22/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| CONNOR CALLANAN, | C094008 |
| Cross-complainant and Appellant, | |
| v. | (Super. Ct. No. 20CV057) |
| GRIZZLY DESIGNS, LLC, et al., | |
| Cross-defendants and Respondents. | |

At issue in this appeal is whether a cross-complaint filed by Connor Callanan against Charles Menken, Steven Menken, and Grizzly Designs, LLC, dba Brotherly Love (collectively "the Menkens") is a SLAPP suit[1] subject to a special motion to strike under Code of Civil Procedure section 425.16 (also known as the anti-SLAPP statute).[2]  The Menkens contend Callanan's cross-complaint is a SLAPP suit because it was filed in

---

[1]  SLAPP stands for strategic litigation against public participation.  (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1 (*Navellier*).)

[2]  Further undesignated statutory references are to the Code of Civil Procedure.

retaliation for a cross-complaint they filed against Callanan, and they filed a motion under section 425.16 seeking to strike it.  The trial court granted the motion, and Callanan appeals.  For the reasons stated below, we find Callanan's cross-complaint is *not* a SLAPP suit because none of his claims arise from the filing of the Menkens' cross-complaint.  We thus reverse the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Although the Menkens' motion is directed solely at Callanan's cross-complaint, there are actually three separate complaints in this case:  (1) a complaint filed by Riccardo Marino against the Menkens; (2) a cross-complaint filed by the Menkens against Marino and Callanan;[3] and (3) a cross-complaint filed by Callanan against the Menkens.  Marino's complaint is not at issue here, and he is not a party to this appeal.  We thus summarize only the Menkens' cross-complaint against Callanan and Callanan's cross-complaint against the Menkens.

### *The Menkens' Cross-complaint*

As noted, the Menkens filed a cross-complaint against Marino and Callanan.  According to the allegations in the Menkens' cross-complaint, the relevant facts are as follows.

The Menkens are "engaged in the research and development of various cannabis based products intended for marketing in the burgeoning cannabis market space."  Marino and Callanan own and operate a business called UHSE Media LLC that provides media, marketing, and consulting services to the cannabis industry, and that holds itself out as having "specialized knowledge regarding the cultivation of high quality cannabis, and the preparation, marketing, development and branding of unique, high quality cannabis-based products for distribution in the cannabis market space."  In May 2019, the

---

[3]  The Menkens also sued Sierra Van Meter, who is alleged to be Marino's significant other.  Because Van Meter is not relevant to this appeal, we do not mention her further.

2

Menkens entered into an "oral agreement" with Marino and Callanan for such consulting services and agreed to pay them $30,000 each. The Menkens claim that, at least as to this consulting work, Marino and Callanan were independent contractors rather than employees.

Marino and Callanan were "permitted" to live at the Menkens' "business location" "as they deemed necessary" in order to do their consulting work, but they "were at all times free to come and go as they determined necessary and for their own purposes." They began living and working at the Menkens' business location in late May 2019.

The Menkens run an apprenticeship program that gives "individuals seeking to gain entry into the cannabis production space . . . the opportunity to learn all phases of cannabis product production, including, but not limited to, planting, cultivating, harvesting, curing, manicuring, processing, packaging and/or marketing" cannabis. Although Marino and Callanan were not apprentices themselves, they were permitted to "embed themselves alongside such apprentices . . . to better inform their understanding" of the farm's "unique and distinctive processes, procedures and branding elements." At some point in time, Marino and Callanan began performing the duties assigned to the apprentices, including cultivating, harvesting, and processing cannabis. The Menkens contend "the substantial majority" of the work Marino and Callanan did on the farm was related to their independent media and consulting business. The Menkens also allege, however, that by November 2019, Marino and Callanan were failing to perform media and consulting services and were instead spending most of their time harvesting and processing cannabis. Marino and Callanan also began demanding sums of money "they believed they were entitled to under California's wage and hour laws." At this point, the parties' relationship "became openly hostile" and Marino and Callanan (allegedly) set fire to a building that was used as an office and sleeping quarters, causing over $100,000 in damages. Marino and Callanan thereafter "embark[ed] on a campaign of harassing, defamatory and extortionate conduct" that included threatening to release photos and

3

videos that showed the Menkens " 'doing VERY illegal actions' " unless the Menkens (1) paid them $630,000, and (2) "convert[ed] them to wage/hour employees."

Based on these allegations, the Menkens asserted causes of action against Marino and Callanan for negligent and/or malicious destruction of property; civil conspiracy/extortion; intentional infliction of emotional distress; misappropriation of trade secrets; tortious breach of contract; and breach of the implied covenant of good faith and fair dealing.

### Callanan's Cross-complaint

Callanan then filed a cross-complaint against the Menkens, and it is Callanan's cross-complaint that is the subject of the underlying anti-SLAPP motion.[4]

According to the allegations in Callanan's cross-complaint, the Menkens operate a licensed cannabis farm in Northern California, and Callanan was employed by the Menkens to work on the farm. He alleges the Menkens deliberately misclassified him and others as independent contractors in order to deny them protections afforded to employees under California wage and hour laws. More particularly, he alleges the Menkens offered him a job in May 2019 and verbally agreed to pay him $30,000 for the six-month growing season; later, however, they presented him with a written contract that stated he would receive a salary of $30,000 per year and a production bonus of $30 per pound of cannabis harvested. He alleges various claims that he was not paid proper wages and that the Menkens ordered him to stay on the farm and threatened to reduce his production bonus if he did not stay.

Callanan also alleges he was severely burned in a fire in the farm's bunkhouse (which is presumably the same fire that the Menkens allege he and Marino intentionally set), and the Menkens thereafter "began a vengeful tirade" against him. He alleges the

---

[4] We note that Callanan's cross-complaint is virtually identical to Marino's complaint.

Menkens only paid him a $30,000 production bonus he was owed "while [he] lay in the hospital emergency room," and they did not carry workers' compensation insurance, which left him "with limited options to recover for the severe burns covering over 30% of his body."

Callanan's cross-complaint asserted fifteen causes of action against the Menkens for: (1) failure to pay minimum wages in violation of Labor Code section 1194; (2) false imprisonment; (3) failure to pay wages when due in violation of Labor Code section 204; (4) inducing him to relocate for work by making false representations about his compensation, in violation of Labor Code section 970; (5) failure to pay wages for missed meal periods in violation of Labor Code section 226.7; (6) failure to pay wages for missed rest periods in violation of Labor Code section 226.7; (7) failure to reimburse for business expenses in violation of Labor Code section 2802; (8) failure to provide accurate, itemized wage statements in violation of Labor Code section 226; (9) failure to maintain accurate payroll records in violation of Labor Code section 1174; (10) failure to promptly pay all wages due upon termination of employment, in violation of Labor Code sections 201, 202, and 203; (11) unfair competition; (12) unjust enrichment; (13) breach of contract; (14) conversion; and (15) recovery of civil penalties under the Labor Code Private Attorneys General Act (Lab. Code, § 2698 et seq.).

Finally, and critically for purposes of this appeal, Callahan's cross-complaint contains the following allegation:

"[Callanan] initially decid[ed] to not file an employment claim against [the Menkens] because [they] did pay the $30,000 Production Bonus to [Callanan]. [Callanan] decided that [the Menkens'] atrocious behavior merited filing this claim because of the baseless Cross-Complaint filed against him, alleging he intentionally started the fire in the bunkhouse which burned him severely."

It is this allegation that apparently spawned the Menkens' anti-SLAPP motion.

5

*The Menkens' Anti-SLAPP Motion*

The Menkens filed a motion to strike Callanan's cross-complaint pursuant to section 425.16. As noted above, the motion is based entirely on the allegation that Callanan filed his cross-complaint against the Menkens because they filed a cross-complaint against him. The Menkens argued this allegation conclusively demonstrates that Callanan filed his cross-complaint to retaliate against them for exercising their constitutional right of petition, and thus "violates the Anti-SLAPP law on its face." The trial court agreed, finding the offending allegation "makes clear that the cross-complaint was filed only as a result of [the Menkens] suing Callanan." The trial court also found Callanan failed to establish there was a reasonable probability he would prevail on any of his 15 causes of action. It thus granted the motion to strike, and this appeal followed.

## DISCUSSION

A cause of action "arising from" the defendant's exercise of the constitutional right of free speech or petition for the redress of grievances, is commonly known as a SLAPP suit (§ 425.16, subd. (b)(1)). A claim arises from the defendant's speech or petitioning activity "only if the speech or petitioning activity *itself* is the wrong complained of." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

A SLAPP suit is subject to a special motion to strike pursuant to section 425.16, also known as the anti-SLAPP statute. Section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Courts frequently refer to acts in furtherance of a person's right of petition or free speech as "protected activity."

6

(*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Park, supra*, 2 Cal.5th at p. 1062.)

Resolution of a special motion to strike, also referred to as an anti-SLAPP motion, "requires the court to engage in a two-step process." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).) First, the court must determine whether "the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)" (*Ibid.*) If the defendant fails to meet its burden, there is no need to proceed to the second step of the process, and the motion must be denied. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81 (*City of Cotati*) ["In view of our conclusion that City's cause of action did not arise from Owners' federal suit, we do not reach the anti-SLAPP statute's secondary question"]; *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 55 [if action does not arise out of protected activity, "the trial court need not proceed to the second prong of the anti-SLAPP analysis"].) If the defendant meets its burden, the court proceeds to the second step, which requires it to determine "whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises, supra*, 29 Cal.4th at p. 67.) In making these determinations, the court analyzes each challenged cause of action separately, and may strike some causes of action, while allowing others to remain. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.) "In making its determination, the court shall consider the pleadings, and supporting and opposing

7

affidavits stating the facts upon which the liability or defense is based."[5]  (§ 425.16, subd. (b)(2).)

We review de novo the grant or denial of an anti-SLAPP motion, and we exercise our independent judgment in determining whether the challenged claims arise from protected activity.  (*Park, supra*, 2 Cal.5th at p. 1067.)

Callanan argues the trial court should have denied the anti-SLAPP motion at the first step of the process because his cross-complaint does not arise from an act in furtherance of the Menkens' right of petition or free speech.  We agree.

"The filing of a complaint is a protected activity under the anti-SLAPP statute (the right to petition)."  (*Joslin v. Third Laguna Hills Mutual* (2020) 49 Cal.App.5th 366, 369 (*Joslin*); see also *Navellier, supra*, 29 Cal.4th at p. 90 [constitutional right of petition includes basic act of filing lawsuit].)  The Menkens thus engaged in protected petitioning activity when they filed their cross-complaint against Callanan.  The issue in this case is whether any of Callanan's claims against the Menkens arise from that protected activity.  They do not.

As our Supreme Court has recognized, "the 'arising from' requirement is not always easily met."  (*Equilon Enterprises, supra*, 29 Cal.4th at p. 66.)  "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.  [Citation.]  Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such."  (*Navellier, supra*, 29 Cal.4th at p. 89.)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the defendant's act underlying the plaintiff's cause of action must

---

[5]  The Menkens motion was based entirely on the pleadings, and they submitted no affidavits in support of their motion.  Callanan submitted a declaration and various exhibits in support of his opposition to the motion.

*itself* have been an act in furtherance of the right of petition or free speech.' [Citations.]" (*Park, supra*, 2 Cal.5th at pp. 1062-1063.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) Put another way, courts should first identify "the allegedly wrongful and injury-producing conduct that provides the foundation for the claims," and then determine whether *that conduct itself* constitutes protected activity. (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491; see also *Equilon Enterprises, supra*, 29 Cal.4th at p. 66 ["The only means specified in section 425.16 by which a moving defendant can satisfy the ['arising from'] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured" constitutes protected activity].)

Here, the injury-producing conduct is *not* the Menkens' filing of a cross-complaint against Callanan; instead, it is the Menkens' alleged failure to comply with various wage and hour laws and other actions they took that have nothing to do with the Menkens' filing of a cross-complaint. For example, in support of his first cause of action, Callanan alleges the Menkens failed to pay him the applicable minimum wage for each hour he worked, and that failure is thus the injury-producing conduct. The failure to pay minimum wage, however, has nothing to do with the Menkens' filing of a cross-complaint. Again, the focus must be on " 'the defendant's act underlying the plaintiff's cause of action,' " and the critical question is whether *that act itself* was " 'in furtherance of the right of petition or free speech.' " (*Park, supra*, 2 Cal.5th at p. 1063.) Failing to pay minimum wage is not an act in furtherance of the right of petition or free speech. The first cause of action thus does not arise from the Menkens' filing of a cross-complaint.

As another example, in the fifth cause of action Callanan alleges the Menkens violated Labor Code section 970, which prohibits employers from inducing or persuading employees to move to or within California by knowingly misrepresenting the

9

compensation for the work. (Lab. Code, § 970; see also *Finch v. Brenda Raceway Corp.* (1994) 22 Cal.App.4th 547, 553 [to establish claim under Lab. Code, § 970, plaintiff must prove defendant "made a knowingly false representation [about the position] with the intent to persuade her to move there from another place to take the position"].) In support of this cause of action, Callanan alleges the Menkens induced him to move from Florida to California by falsely promising to pay him $30,000 for the six-month growing season, and then only paying him $30,000 per year (or less). Again, the conduct underlying this cause of action has nothing to do with the Menkens' filing of a cross-complaint, and the cause of action thus does not arise from that cross-complaint.

As a final example, in support of the second cause of action for false imprisonment, Callanan alleges the Menkens ordered him to stay on the farm and threatened to reduce his production bonus if he did not. He also alleges one of the Menkens threatened him with a firearm, which increased his fear and prevented him from leaving the farm at will. None of these acts have anything to do with the Menkens' filing of a cross-complaint.

We note that a similar analysis applies to *all* of Callanan's claims. We also note that the conduct underlying *all* of Callanan's claims occurred either while he was working for the Menkens or immediately after he stopped working for them. All of this conduct thus pre-dates the Menkens' cross-complaint, which was filed months after Callanan stopped working for them. Because all of Callanan's claims are based on conduct that occurred *before* the Menkens filed their cross-complaint, they almost by definition cannot be deemed to arise from the filing of that cross-complaint within the meaning of section 425.16. (See, e.g., *Park, supra*, 2 Cal.5th at p. 1063 [plaintiff's lawsuit did not arise from defendant's lawsuit, but from "dispute that existed *prior to*" defendant's lawsuit (italics added)].)

It is useful to compare this case to *Navellier, supra*, 29 Cal.4th 82. There, the plaintiffs sued the defendant in federal court for breach of fiduciary duty. The parties

10

thereafter reached at least a partial settlement, and the defendant signed a general release of claims. The plaintiffs subsequently amended their federal lawsuit, and the defendant then filed various counterclaims. (*Id.* at p. 86.) While the federal suit was still pending, the plaintiffs filed a complaint in state court for breach of contract based on the allegation that the defendant breached the parties' settlement agreement by filing counterclaims that were included within the scope of the general release. The defendant filed an anti-SLAPP motion, which the trial court denied, and the appellate court affirmed because it found the state court complaint did not arise from the defendant's federal counterclaims. The Supreme Court reversed, because the very act on which the plaintiffs' breach of contract claim was based—i.e., the defendant's filing of a claim for relief in federal court—constituted protected petitioning activity. (*Id.* at p. 87.) As the court put it, "[Defendant] is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit . . . plaintiffs' present claims would have no basis." (*Navellier, supra*, 29 Cal.4th at p. 90.)

This case is different because, unlike in *Navellier*, the Menkens are not being sued because of the cross-complaint they filed against Callanan. Instead, they are being sued because they allegedly failed to pay Callanan as required by California law and the parties' agreement; ordered him to stay on the farm and threatened to withhold his bonus if he left; made false representations about his compensation to induce him to move to the farm; failed to reimburse him for business expenses; and stole $180 from his wallet. None of these actions have anything to do with their cross-complaint. Moreover, and again unlike in *Navellier*, all of Callanan's claims against the Menkens would exist even if they had never filed a cross-complaint against Callanan. Thus, it does not matter what motivated Callanan to file his cross-complaint.

At best, the Menkens have established that Callanan would not have sued them if they had not sued him first, and that his suit was thus in some sense retaliatory. This, however, is not sufficient under the anti-SLAPP statute. "[A] cross-complaint or

independent lawsuit filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be reviewed as an oppressive litigation tactic.  No lawsuit is properly subject to a special motion to strike under section 425.16 unless its allegations arise from acts in further of the right of petition or free speech." (*Kajima Engineering & Construction, supra*, 95 Cal.App.4th at p. 924.)  Even our Supreme Court has explained, "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of free speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' " (*City of Cotati, supra*, 29 Cal.4th at p. 77.)

     *City of Cotati* is instructive in this regard.  There, a group of mobilehome park owners sued a city in federal court seeking a judicial declaration that a new mobilehome park rent stabilization ordinance was unconstitutional.  The city then sued the owners in state court seeking a judicial declaration that the ordinance was constitutional, and it admitted it did so because it thought state court would be a more favorable forum than federal court in which to litigate the constitutionality of the ordinance.[6] (*City of Cotati, supra*, 29 Cal.4th at pp. 72-73.)  In a later case explaining *City of Cotati*, the Supreme Court noted that "it could be said that" the city's lawsuit "was filed *because of*" the owners' lawsuit "in that perhaps the [city] would not have filed suit had the [owners] not done so first." (*Park, supra*, 2 Cal.5th at p. 1064.)  The owners filed an anti-SLAPP motion in state court.  The trial court granted the motion, finding the city's complaint arose from the owners' complaint, and the city failed to demonstrate a probability of prevailing on its claim.  The Court of Appeal reversed, and our Supreme Court affirmed. (*City of Cotati, supra*, 29 Cal.4th at pp. 72-73.)  It explained, "the statutory phrase 'cause

---

[6] The city also filed a motion in federal court asking that the owners' action be dismissed on abstention grounds.  (*City of Cotati, supra*, 29 Cal.4th at p. 72.)

of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Id.* at p. 78.)  So defined, the court found the city's complaint did not arise from the owners' complaint, but instead arose from the dispute between the parties over the constitutionality of the ordinance.

This case is similar.  Callanan's cross-complaint does not arise from the Menkens' cross-complaint, but from a dispute over whether the Menkens paid Callanan as required by law, etc., and this is true even though "it could be said" that Callanan's cross-complaint "was filed *because of*" the Menkens' cross-complaint "in that perhaps [Callanan] would not have filed suit had the [Menkens] not done so first." (*Park, supra*, 2 Cal.5th at p. 1064.)

As relevant here, the *City of Cotati* court also held a party's subjective intent or motivation for filing a lawsuit is not relevant to determining whether that lawsuit arose from an act in furtherance of the right to petition for free speech.  (*City of Cotati, supra*, 29 Cal.4th at p. 74 ["Whether City's subjective motivations for filing this action were, in reality, primarily as City describes them, or primarily in accordance with Owners' speculation, cannot be ascertained with certainty from the record. . . .  Fortunately, the question of subjective intent is not relevant"].)  Numerous cases agree.  (See *Equilon Enterprises, supra*, 29 Cal.4th at p. 58 ["There simply is 'nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable' "]; *Navellier, supra*, 29 Cal.4th at p. 88 ["the Court of Appeal erred in assuming that whether this action arises from protected activity depends on whether plaintiffs subjectively intended to chill [defendant's] speech or petitioning"]; *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521 ["The subjective intent of a party in filing a complaint is irrelevant in determining whether it falls within the ambit of section 425.16"]; *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 7 ["It is immaterial

13

whether plaintiffs asserted the cause of action 'in response to, or in retaliation for' [the defendant's] attempt to initiate arbitration" because "[t]he anti-SLAPP analysis turns 'on the substance of [the] lawsuit,' not plaintiffs' 'subjective intent' "]; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1234 ["plaintiff's subjective motivations in bringing the suit are irrelevant to the [anti-SLAPP] statute's application"]; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 480 ["We find nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine the anti-SLAPP statute is applicable"].) Callanan's allegation that he sued the Menkens because they sued him first thus does not turn a rather garden-variety wage and hour complaint into a SLAPP suit.

*Joslin, supra*, 49 Cal.App.5th 366 is also instructive. There, a homeowners association (HOA) filed a complaint against a homeowner alleging he had violated its covenants, conditions, and restrictions (CC&Rs), and the homeowner filed a cross-complaint alleging the HOA unlawfully prevented him from renting out the condominium unit he owned. The HOA filed an anti-SLAPP motion, arguing it was clear the homeowner was suing the HOA for suing him. The trial court denied the motion and the appellate court affirmed. (*Id.* at pp. 369-370, 376.)

The *Joslin* court noted, "A cross-complaint may be subject to an anti-SLAPP motion based on the plaintiff's right to petition. [Citation.] However, such a cross-complaint must allege a cause of action arising from the plaintiff's act of filing the complaint itself." (*Joslin, supra*, 49 Cal.App.5th at pp. 371-372.) It explained, "Under the anti-SLAPP statute, a challenged 'claim *arises from* protected activity when that activity underlies or forms the basis for the claim.' " (*Id.* at p. 371.) It also noted that determining whether a particular claim is subject to the anti-SLAPP statute requires the court to consider both (1) the elements of the challenged claim, and (2) what actions supply those elements and thus form the basis of liability. (*Ibid.*) Finally, it held that

14

none of the homeowner's claims arose from the HOA's act of filing its complaint; instead, they all arose from decisions the HOA made and actions it took that allegedly prevented the homeowner from renting out his unit. (*Id.* at p. 374.)

So, too, in this case. Callanan's cross-complaint arises from and is based on conduct and actions by the Menkens that has nothing to do with their cross-complaint. Indeed, the allegedly injury-producing conduct and actions occurred before the Menkens even filed their cross-complaint. Callanan's cross-complaint thus does not arise from the Menkens' act of filing a cross-complaint, and is not subject to early dismissal under the anti-SLAPP statute.[7]

## DISPOSITION

The judgment is reversed, and the trial court is directed to enter an order denying the Menkens' motion. Callanan shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/<br>EARL, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
MAURO, J.

---

[7] As noted above, because the Menkens fail to demonstrate Callanan's cross-complaint arises from their cross-complaint, we need not determine whether Callanan has established a probability of prevailing.

15

Filed 7/22/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| CONNOR CALLANAN, | C094008 |
| Cross-complainant and Appellant, | (Super. Ct. No. 20CV057) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| GRIZZLY DESIGNS, LLC, et al., | |
| Cross-defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Trinity County, Eric L. Heryford, Judge. Reversed.

The Law Offices of Matthew Kumin, Matthew W. Kumin, Kenneth A. Seligson; Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Cross-complainant and Appellant.

Reese, Smalley, Wiseman & Schweitzer and Paul C. Meidus for Cross-defendants and Respondents.

1

THE COURT:

This opinion in the above-entitled matter filed June 29, 2022, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

_____/s/_____
ROBIE, Acting P. J.

_____/s/_____
MAURO, J.

_____/s/_____
EARL, J.

2